**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

MICHAEL DANIEL CUERO,
*Petitioner-Appellant*,

v.

MATTHEW CATE,
*Respondent-Appellee.*

No. 12-55911

D.C. No.
3:08-cv-02008-BTM-WMC

OPINION

Appeal from the United States District Court
for the Southern District of California
Barry T. Moskowitz, District Judge, Presiding

Argued and Submitted August 5, 2015
Pasadena, California

Filed June 30, 2016

Before: Diarmuid F. O'Scannlain, Barry G. Silverman,
and Kim McLane Wardlaw, Circuit Judges.

Opinion by Judge Wardlaw;
Dissent by Judge O'Scannlain

# SUMMARY[*]

## Habeas Corpus

The panel reversed the district court's judgment denying California state prisoner Michael Daniel Cuero's 28 U.S.C. § 2254 habeas corpus petition and remanded.

The panel held that after Cuero entered a binding, judicially-approved plea agreement guaranteeing a maximum sentence of 14 years and 4 months in prison, and stood convicted, the prosecution breached the plea agreement by moving to amend the complaint to charge Cuero's prior assault conviction as a second strike, and the Superior Court acted contrary to federal law, clearly established by the Supreme Court in *Santobello v. New York*, 404 U.S. 257 (1971), when it permitted the amendment and refused to order specific performance of the original plea agreement. The panel wrote that by failing to interpret Cuero's plea agreement consistently with California contract law, the Superior Court unreasonably applied federal law clearly established by the Supreme Court in *Ricketts v. Adamson*, 483 U.S. 1 (1987). The panel explained that allowing Cuero to withdraw his guilty plea, exposing Cuero to the risk of trial and receiving an indeterminate sentence of 64 years to life, was no remedy. The panel remanded with instructions to issue a conditional writ requiring the state to resentence Cuero in accordance with the original plea agreement within 60 days of the issuance of the mandate.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Dissenting, Judge O'Scannlain wrote that the majority erroneously orders federal habeas relief to a state prisoner on the basis of a non-existent plea agreement and irrelevant state contract law.

## COUNSEL

Devin Burstein (argued), Warren & Burstein, San Diego, California, for Petitioner-Appellant.

Anthony Da Silva (argued) and Matthew Mulford, Deputy Attorneys General; Julie L. Garland, Senior Assistant Attorney General; Gerald A. Engler, Chief Assistant Attorney General; Kamala Harris, Attorney General of California; Office of the Attorney General, San Diego, California; for Respondent-Appellee.

**OPINION**

WARDLAW, Circuit Judge:

On December 8, 2005, Michael Daniel Cuero stood in open court before the Honorable Charles W. Ervin, Judge of the Superior Court in and for the County of San Diego, and pursuant to a written plea agreement, he freely and voluntarily pleaded guilty to one felony count of causing bodily injury while driving under the influence and one felony count of unlawful possession of a firearm. Cuero also admitted a single prior strike conviction[1] and four prison priors.[2] In exchange for Cuero's waiver of his constitutional and numerous other rights, the prosecution dismissed a misdemeanor count, thereby guaranteeing Cuero a maximum sentence of 14 years, 4 months in prison and 4 years of parole, as explained both in the written plea agreement,

---

[1] "California's current three strikes law consists of two virtually identical statutory schemes 'designed to increase the prison terms of repeat felons.'" *Ewing v. California*, 538 U.S. 11, 15 (2003) (quoting *People v. Superior Court of San Diego Cty. ex rel. Romero*, 917 P.2d 628, 630 (Cal. 1996)). When Cuero was charged in 2005, the three strikes law required that a defendant with a single qualifying conviction, i.e., a single strike, "be sentenced to 'twice the term otherwise provided as punishment for the current felony conviction.'" *Id.* at 16 (quoting Cal. Penal Code §§ 667(e)(1), 1170.12(c)(1)). If the defendant had two or more qualifying convictions, the law mandated "an indeterminate term of life imprisonment." *Id.* (quoting Cal. Penal Code §§ 667(e)(2)(A), 1170.12(c)(2)(A)). *See generally* 3 B.E. Witkin et al., California Criminal Law §§ 428–429 (4th ed. 2012).

[2] California Penal Code § 667.5(b) requires a court to "impose a one-year term for each prior separate prison term or county jail term" served by a defendant. California courts refer to these prior terms of incarceration as "prison priors." Cuero admitted serving four prison priors, resulting in the addition of four consecutive years to his sentence.

Appendix A, ¶ 7a, and by Judge Ervin during the plea colloquy. Judge Ervin then accepted Cuero's plea and admissions, and set sentencing for January 11, 2006. That same day, Judge Ervin signed the Finding and Order, Appendix A at 3, stating that "the defendant is convicted thereby."

Cuero stood convicted; "nothing remain[ed] but to give judgment and determine punishment." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). Under clearly established Supreme Court law, the plea agreement bound the government. *See Mabry v. Johnson*, 467 U.S. 504, 507–08 (1984) (a defendant's guilty plea "implicates the Constitution," not the "plea bargain standing alone"); *Santobello v. New York*, 404 U.S. 257, 262 (1971) ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."); *Boykin*, 395 U.S. at 242, 244 ("[A] plea of guilty is more than an admission of conduct; it is a conviction."). In Cuero's case, the government was bound by its agreement in open court that punishment could be no greater than 14 years, 4 months in prison. *See Ricketts v. Adamson*, 483 U.S. 1, 5 n.3 (1987) ("[T]he construction of [a] plea agreement and the concomitant obligations flowing therefrom are, within broad bounds of reasonableness, matters of state law."); *see also Buckley v. Terhune*, 441 F.3d 688, 694 (9th Cir. 2006) (en banc) ("Under *Santobello v. New York*, 404 U.S. 257, 261–62 (1971), a criminal defendant has a due process right to enforce the terms of his plea agreement.").

Improbably, the day before the scheduled sentencing, the state prosecutor moved to amend the criminal complaint to allege an additional prior strike conviction, which, if allowed,

would result in an indeterminate 64 years to life sentence under California's three strikes law.[3] Even more improbably, a different Superior Court judge than Judge Ervin permitted the amendment. Not only did the prosecution breach the plea agreement by seeking to amend the complaint after the deal was sealed, the Superior Court judge unreasonably applied clearly established Supreme Court authority by failing to recognize that the "breach [was] undoubtedly a violation of the defendant's rights." *Puckett v. United States*, 556 U.S. 129, 136 (2009) (citing *Santobello*, 404 U.S. at 262). That the Superior Court allowed Cuero to withdraw his guilty plea and enter a new plea agreement calling for an indeterminate 25 years to life sentence was no remedy here; Cuero lost the benefit of his original bargain.

Because the state court neither recognized nor applied clearly established Supreme Court authority, and acted in contravention of that authority, we reverse the judgment of the district court denying Cuero's habeas petition, and we remand with instructions to issue the writ of habeas corpus.

## I. Jurisdiction and Standard of Review[4]

We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253. We review de novo a district court's denial of a habeas petition. *Hurles v. Ryan*, 752 F.3d 768, 777 (9th Cir. 2014).

---

[3] Although the state also alleged two additional "serious felony" priors, it was the addition of the second strike that exposed Cuero to an indeterminate life sentence.

[4] Cuero properly exhausted on direct and collateral review his claims that the prosecutor breached the plea agreement in violation of his due process rights and that he received ineffective assistance of counsel. We do not reach the latter claim.

Because Cuero filed his federal habeas petition after April 24, 1996, the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") governs our review. *Id.*

AEDPA bars relitigation of any claim adjudicated on the merits in state court, unless the state court's decision satisfies the exceptions contained in 28 U.S.C. §§ 2254(d)(1) or (2). *Harrington v. Richter*, 562 U.S. 86, 98 (2011). Those exceptions authorize a grant of habeas relief where the relevant state-court decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1), (2).

"[A] state-court decision is contrary to Federal law 'if the state court arrives at a conclusion opposite to that reached by th[e Supreme] Court on a question of law,' or 'the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court].'" *Murray v. Schriro*, 745 F.3d 984, 997 (9th Cir. 2014) (alterations in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). "A state-court decision is an 'unreasonable application' of Supreme Court precedent if 'the state court identifies the correct governing legal rule from th[e Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case,' or 'the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" *Id.* (alterations in original) (quoting *Williams*, 529 U.S. at 407).

We review the last reasoned decision of the state courts. "When a state court does not explain the reason for its decision, we 'look through' to the last state-court decision that provides a reasoned explanation capable of review." *Id.* at 996 (quoting *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000)). Where a reasoned state-court decision exists, we do not "evaluate all the hypothetical reasons that could have supported the high court's decision." *Cannedy v. Adams*, 706 F.3d 1148, 1157 (9th Cir.), *amended on denial of reh'g by* 733 F.3d 794 (9th Cir. 2013); *see also id*. at 1159 ("*Richter* does not change our practice of 'looking through' summary denials to the last reasoned decision—whether those denials are on the merits or denials of discretionary review." (footnote omitted)); *Medley v. Runnels*, 506 F.3d 857, 862–63 (9th Cir. 2007) (en banc) (Judge Callahan writing for the majority). Here, we evaluate the San Diego Superior Court's decision to grant the prosecution's motion to amend the complaint following Cuero's entry of his original guilty plea and his conviction based on that plea.[5]

## II. Discussion

*A. Cuero entered a binding, judicially approved plea agreement and stood convicted.*

Under clearly established Supreme Court law, Cuero stood convicted and his plea agreement became binding the moment the first Superior Court judge accepted his guilty

---

[5] On direct appeal, Cuero's appointed counsel filed a brief pursuant to *People v. Wende*, 600 P.2d 1071 (Cal. 1979) (en banc), and *Anders v. California*, 386 U.S. 738 (1967). The California Court of Appeal affirmed Cuero's conviction and sentence in an unpublished, unreasoned opinion, finding "no reasonably arguable appellate issue."

plea. "A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction." *Boykin*, 395 U.S. at 242. And "[w]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, *such promise must be fulfilled.*" *Santobello*, 404 U.S. at 262 (emphasis added)*; see also* Peter Westen & David Westin, *A Constitutional Law of Remedies for Broken Plea Bargains*, 60 Calif. L. Rev. 471, 474 (1978) (citing the language quoted above as the "undisputed holding" of *Santobello*). A defendant's guilty plea thus "implicates the Constitution," transforming the plea bargain from a "mere executory agreement" into a binding contract. *Mabry*, 467 U.S. at 507–08.[6] In other words, a guilty plea seals the deal between the state and the defendant, and vests the defendant with "a due process right to enforce the terms of his plea agreement." *Buckley*, 441 F.3d at 694 (citing *Santobello*, 404 U.S. at 261–62); *see also Doe v. Harris*, 640 F.3d 972, 975 (9th Cir. 2011); *Brown v. Poole*, 337 F.3d 1155, 1159 (9th Cir. 2003).

---

[6] Although *Mabry* clarified the constitutional significance of a consummated plea agreement, insofar as Cuero's case is concerned, it did nothing more. As the dissent points out, *Mabry* involved a "prosecutor's *withdrawn offer*." 467 U.S. at 510 (emphasis added). In *Mabry*, the prosecution had offered the defendant more lenient sentencing terms in exchange for his guilty plea and, when the defendant attempted to accept the offer, the government withdrew it. *Id.* at 505–06. The defendant then opted to stand trial and, following a mistrial, pleaded guilty on entirely different terms. *Id*. at 506. Unsurprisingly, the *Mabry* court refused to enforce the prosecutor's original, withdrawn offer—the defendant's guilty plea "was in no sense induced by the prosecutor's withdrawn offer," *id*. at 510, and that "executory agreement" was not made binding through an "ensuing guilty plea," *id*. at 507.

In *Buckley v. Terhune*, our court, sitting en banc, affirmed a grant of habeas relief pursuant to 28 U.S.C. § 2254(d)(1) that ordered specific enforcement of the terms of a plea agreement. 441 F.3d at 691. There, the state prosecutor offered a plea bargain: Buckley would provide cooperating testimony against his codefendants in return for which the prosecutor would dismiss his robbery and burglary charges and reduce the first degree murder charge against him to second degree. *Id.* Attached to the offer was a felony disposition statement that stated, under "Consequences of the Plea," that Buckley could be sentenced to a "*maximum possible term of 15 years*." *Id.* Buckley signed the plea agreement, initialing the maximum sentence line on December 17, 1987. *Id.* At some point before the change of plea hearing on January 4, 1988, the state prosecutor, on his own and without Buckley's knowledge, added a handwritten paragraph to the disposition statement stating that the sentence would be a "*maximum term of 15 years to life*." *Id.* at 691–92. Just as in Cuero's case, during the guilty plea colloquy pursuant to the plea bargain, the state court told Buckley that he could be sentenced to state prison for a "*maximum possible term of fifteen years*." *Id.* at 692. Following the trial of his codefendants in which Buckley "complied with the terms of the negotiated disposition," according to the state prosecutor, the court sentenced Buckley to a prison term of 15 years to life. *Id.* at 693. And, again, just as in Cuero's case, the last reasoned state court decision failed to "interpret Buckley's plea agreement according to California contract law." *Id.* at 691. We affirmed the district court's grant of habeas relief because the state court's failure was "contrary to clearly established Supreme Court law as set forth in *Santobello v. New York* . . . and *Ricketts v. Adamson*," satisfying § 2254(d)(1)'s "contrary to" exception. *Id.*

While the state prosecutor here did not act so underhandedly as Buckley's, the same result obtained—Cuero performed his part of the bargain only to have the state renege on its. The state originally charged Cuero with two felonies and a misdemeanor. It later amended the complaint to add a single prior strike conviction and four prison priors. Next, the parties entered into a written plea agreement through which the state induced Cuero to cede his constitutional and other rights and plead guilty in exchange for the state's promise to drop the misdemeanor charge, thereby guaranteeing Cuero a "maximum [sentencing] exposure of 14 years, 4 months in state prison, 4 years on parole and a $10,000 fine." On December 8, 2005, the parties signed the plea agreement, which is on page three of the dissent's Appendix A, and which, as in *Buckley*, under "Consequences of the Plea" set forth Cuero's state-guaranteed maximum sentencing exposure. That same day, Judge Ervin held a change of plea hearing. The state prosecutor, Kristian Trocha, Cuero, and Cuero's counsel, Alberto Tamayo, stood before Judge Ervin and expressed their mutual intent to "settle this case today." The court received the charge sheet—i.e., the amended complaint, Appendix A.1, attached to the majority opinion—and asked counsel to what Cuero would be pleading. Cuero's counsel, referring to the charge sheet, stated that Cuero would be pleading to "the sheet without the Count 3 misdemeanor." Judge Ervin reiterated, "He's going to plead guilty to everything on the charging document with the exception of Count 3." The judge next indicated that "It is a sentence for the Court, no deals with the people," meaning that the plea agreement was as to the charge and not to the specific

sentence.[7] Both the prosecutor and defense counsel assented.[8]

---

[7] Two types of plea bargains exist: charge bargains and sentence bargains. Charge bargains "consist[] of an arrangement whereby the defendant and prosecutor agree that the defendant should be permitted to plead guilty to a charge less serious than is supported by the evidence." 5 Wayne R. LaFave et al., Criminal Procedure § 21.1(a) (4th ed. 2015). Sentence bargains "involve[] an agreement whereby the defendant pleads 'on the nose,' that is, to the original charge, in exchange for some kind of promise from the prosecutor concerning the sentence to be imposed." *Id.*; *see also United States v. Miller*, 722 F.2d 562, 563 (9th Cir. 1983) (explaining that charge bargains are "predicated upon the dropping of counts," whereas sentence bargains are "predicated either upon the [prosecutor's] recommendation of or agreement not to oppose a particular sentence . . . , or upon a guarantee of a particular sentence"). "Sentence bargaining carries with it a somewhat greater risk than charge bargaining. When a defendant bargains for a plea to a lesser offense, he receives his bargain the instant he enters his guilty plea, but when he pleads guilty in exchange for the prosecutor's promise to seek a certain sentence there remains some possibility that . . . the trial judge will not follow the prosecutor's recommendations." LaFave, *supra*, at § 21.1(a). This case involves only charge bargaining.

Federal Rule of Criminal Procedure 11(c)(1) also reflects the distinction between a charge bargain and a sentence bargain, and prescribes procedures for each:

> [T]he plea agreement may specify that an attorney for the government will:
>
> (A) not bring, or will move to dismiss, other charges;
>
> (B) recommend, or agree not to oppose the defendant's request, that a particular sentence or sentencing range is appropriate or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request does not bind the court); or

Cuero was then placed under oath and asked by Judge Ervin "Did you hear the plea agreement that I described?" Following Cuero's affirmative response, the court asked, "Is it your full and complete understanding to settle this case today?" The court went on to review the forms, the dissent's Appendix A, with Cuero, asking Cuero again to inform him that he "wish[ed] to accept the agreement to this case, written on the blue form," and to confirm Cuero "sign[ed] his name," "place[d] his initials in these boxes," and "put his thumb print on it." Again, following Cuero's affirmative responses, the court stated, "In addition to the plea agreement, the document [Appendix A to the dissent] sets forth and describes constitutional rights that you enjoy." *See* Appendix A at 1. The court next informed Cuero that 14 years, 4 months in prison was the "maximum punishment [he] could receive," and Cuero pleaded guilty to the two felonies and admitted his single strike and four prison priors. The court accepted the

---

(C) agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement).

Fed. R. Crim. P. 11(c)(1)(A)–(C).

Thus, there were no agreements about Cuero's sentence, as indicated by Appendix A to the dissent; rather, because the state agreed to drop the misdemeanor charge, Cuero's sentence was limited to 14 years and 4 months.

[8] The dissent misleadingly mistakes the "no deals with the people" language to mean that there was no plea agreement, and, ironically, holds up the document setting forth the plea agreement, Appendix A, to support its view.

plea. The court then turned to the prosecutor, Mr. Trocha, and asked, "People's motion as to the misdemeanor count, which is Count 3?" Mr. Trocha stated, "Dismiss in light of the plea." The court then granted the state's motion "in light of the plea," accepted "the defendant's plea and admissions," and concluded that "the defendant is convicted thereby." Nothing more was required to consummate Cuero's plea agreement; it "was accepted and final . . . at the moment that the judge made the requisite factual findings and accepted the plea." *Brown*, 337 F.3d at 1159. And the prosecution was bound by the agreement's terms, which it acknowledged by immediately moving to dismiss the misdemeanor charge.**[9]**

---

**[9]** Absurdly, the dissent attaches the very document that the court and both state and defense counsel identified as the written plea agreement as purported proof that there was no agreement. The dissent's analysis reads like the caption "This is not a pipe" below Magritte's famous painting of a pipe. Even more mystifying, the dissent disregards the entire plea colloquy, transcript of proceedings, and the written plea agreement itself to reach this convenient conclusion. The dissent stands alone in its erroneous conclusion—not even the state disputed the existence of the plea agreement, until oral argument, and it waived that argument by failing to raise it in the answering brief. *Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009) (holding that an argument not addressed in an answering brief is waived (citing *United States v. Gamboa-Cardenas*, 508 F.3d 491, 502 (9th Cir. 2007)). Throughout its briefing, the state insists that California law allowed it to amend the complaint, even after the plea agreement was entered and Cuero was convicted. By contrast, Cuero argued throughout his opening brief that the state breached his original plea agreement—and the state did not dispute the original plea agreement's existence anywhere in its answering brief. To the contrary, the state acknowledged the agreement's existence and framed the issue to be resolved as "[w]hether amendment of the complaint after Cuero pleaded guilty *violated the plea agreement* and Cuero's right to due process." Indeed, the state's brief contrasted Cuero's "initial plea agreement" with his "second" or "new plea agreement." It was therefore no wonder that members of our panel greeted the state's argument that

B.  *The prosecution breached the court-approved plea agreement by attempting to amend the complaint.*

Although the prosecution initially honored its promise to dismiss the misdemeanor charge, it then breached the plea agreement by moving to amend the complaint to charge Cuero's prior assault conviction as a second strike. The Superior Court acted contrary to clearly established Supreme Court law by permitting the amendment and refusing to enforce the original plea agreement.

"[T]he construction of [a] plea agreement and the concomitant obligations flowing therefrom are, within broad bounds of reasonableness, matters of state law." *Adamson*, 483 U.S. at 5 n.3; *see also Buckley*, 397 F.3d at 1161–62 (Bea, J., dissenting) ("At the time of the state habeas proceeding, clearly established Federal law, as determined by the Supreme Court, made the interpretation and construction of a plea agreement a matter of state law." (citing *Adamson*, 483 U.S. at 5 n.3)), *majority rev'd en banc*, 441 F.3d 688 (9th Cir. 2006); *see also Puckett*, 556 U.S. at 137 ("[P]lea bargains are essentially contracts."). "Under AEDPA, we . . . must consider whether the [state court] decision is consistent with a proper application of state contract law in interpreting the plea agreement; if not, the decision was an 'unreasonable application of' clearly established federal law." *Davis v. Woodford*, 446 F.3d 957, 962 (9th Cir. 2006) (citing, *inter alia*, *Adamson*, 483 U.S. at 5 n.3). In *Buckley*, we noted that as of 1999, when the state court summarily denied Buckley's habeas petition, the obligation to construe plea agreements according to state contract law "had been clearly established

there was no plea agreement, made for the first time at oral argument, with incredulity.

federal law for more than a decade." 441 F.3d at 694–95 (quoting *Adamson*, 483 U.S. at 6 n.3).[10]

Under California law, "[a] plea agreement is, in essence, a contract between the defendant and the prosecutor to which the court consents to be bound." *People v. Segura*, 188 P.3d 649, 656 (Cal. 2008) (quoting *People v. Ames*, 261 Cal. Rptr. 911, 913 (Ct. App. 1989)). Thus, "[a] negotiated plea agreement . . . is interpreted according to general contract principles." *People v. Shelton*, 125 P.3d 290, 294 (Cal. 2006). Under California law, "[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting." Cal. Civ. Code § 1636. A contract's "clear and explicit" language governs its interpretation. *Id.* § 1638. Moreover, "[a]lthough a plea agreement does not divest the court of its inherent sentencing discretion, 'a judge who has accepted a plea bargain is bound to impose a sentence within the limits of that bargain.'" *Segura*, 188 P.3d at 656 (quoting *Ames*, 261 Cal. Rptr. at 913).

---

[10] The dissent argues that *Buckley*'s reasoning was undermined to the point of irreconcilability by the Supreme Court's intervening opinions in *Wilson v. Concorran*, 562 U.S. 1 (2010) (per curiam), and *Swarthout v. Cooke*, 562 U.S. 216 (2011) (per curiam), freeing our three-judge panel to entirely disregard the en banc *Buckley* decision. The dissent is incorrect. *Wilson* and *Swarthout* each reversed an intermediate appellate decision based on perceived errors of state, rather than federal, law in the areas of statutory aggravation and parole, respectively. They do not speak to the situation where, as here, the Supreme Court has clearly held that the federal constitutional due process right is itself defined by reference to principles of state law. *Buckley*, 441 F.3d at 695 (citing *Adamson*, 483 U.S. at 6 n.3).

The terms of Cuero's plea agreement were "clear and explicit": Cuero promised to plead guilty to two felonies, a prior strike, and four prison priors; in exchange, the state promised to drop the misdemeanor charge. By seeking to amend the charges in the complaint, the prosecution denied Cuero the benefit of his bargain: a maximum sentence of 14 years and 4 months. And, as a result of the amendment, the Superior Court ultimately imposed an indeterminate life sentence well beyond the limits of the plea agreement.[11]

Moreover, the agreement said nothing about altering the foundational assumption on which the bargain was struck—namely, the set of charges alleged in the criminal complaint. *See People v. Walker*, 819 P.2d 861, 867 (Cal. 1991) *overruled on other grounds by People v. Villalobos*, 277 P.3d 179 (Cal. 2012) ("When a guilty plea is entered in exchange for specified benefits such as the dismissal of other counts or an agreed maximum punishment, both parties, including the state, must abide by the terms of the agreement."). Such an implied term would render the agreement illusory by providing the state unfettered license to terminate it. *See Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 791 (9th Cir. 2012) ("[A]n enforceable termination clause that gives a promisor an unrestricted power to terminate a contract at any time, without notice,

---

[11] The state argues that its conduct was appropriate because California Penal Code § 1192.5 allows a state court to, among other things, "withdraw its approval [of a plea] in the light of further consideration of the matter." But that is not what happened here. Rather, the *prosecution* sought to renege on its court-approved promise to Cuero. The result: Cuero received a sentence far greater than that specified in the court-approved plea agreement. Section 1192.5 actually prohibits what took place here. That section disallows the imposition of "a punishment more severe than that specified in the plea."

renders the promise illusory and unenforceable, at least so long as the purported contract remains wholly executory."). This outcome is inconsistent with California contract law, which prefers an "interpretation which gives effect" to a contract over one that would render it void. Cal. Civ. Code § 3541.[12]

As in *Buckley*, where we noted that the state court's decision denying habeas neither mentioned state contract law nor referred to the terms of the plea agreement, nothing in the second Superior Court judge's decision permitting the state prosecutor's amendment here suggests that it understood it was dealing with a binding plea agreement, let alone that it was constitutionally obligated to construe the agreement in accordance with state contract law. *See Buckley*, 441 F.3d at 696. Tellingly, the Superior Court permitted the amendment

---

[12] The state argues that our construction of the plea agreement is foreclosed by California Penal Code § 969.5, which permits amendment of a complaint after a defendant pleads guilty if the complaint "does not charge all prior felonies of which the defendant has been convicted." But § 969.5 is irrelevant to the interpretation of a court-approved plea agreement under state contract principles. Under California law, "a prosecutor may withdraw from a plea bargain at any time *before the defendant pleads guilty* or otherwise detrimentally relies on that bargain." Witkin, *supra* at § 382 (emphasis added); *see also People v. Rhoden*, 89 Cal. Rptr. 2d 819, 824–25 (Ct. App. 1999), *as modified on denial of reh'g* (Nov. 23, 1999). Once a defendant enters a guilty plea pursuant to a plea agreement, the state is bound by the agreement and any attempt by the state to withdraw—through a motion to amend the complaint pursuant to § 969.5 or otherwise—constitutes a breach. Simply put, that § 969.5 provides a discretionary vehicle for post-plea amendment of a complaint does not mean that the prosecutor can amend the complaint after the court has approved a plea agreement and signed an order of conviction. In any event, the state *did* charge "all prior felonies of which [Cuero] ha[d] been convicted" in the original complaint—it simply did not charge Cuero's felony assault conviction *as a strike*.

in reliance on two state cases: *People v. Superior Court (Alvarado)*, 255 Cal. Rptr. 46 (Ct. App. 1989), and *People v. Jackson*, 48 Cal. Rptr. 2d 838 (Ct. App.), *review granted and opinion superseded*, 914 P.2d 831 (Cal. 1996). Although both cases address the propriety of permitting amendment of a complaint after a defendant enters a guilty plea, neither addresses the propriety of such amendment after a defendant enters a guilty plea *induced by a prosecutorial promise*—i.e., pursuant to a plea bargain—and it has been approved by the court.[13] *See Jackson*, 48 Cal. Rptr. 2d at 840 ("[T]he court took Jackson's plea to the face of the complaint."); *Alvarado*, 207 Cal. App. 3d at 471 (noting that the transcript of the plea colloquy "does *not* indicate any plea bargain"). In other words, neither *Alvarado* nor *Jackson* discusses the scenario present here, where the court-approved guilty plea was entered pursuant to a written plea agreement. Indeed, neither case contains so much as a hint that the court was applying California contract law. Thus, by failing to interpret Cuero's plea agreement consistently with California contract law, the Superior Court unreasonably applied federal law clearly established by the Supreme Court in *Adamson* nearly thirty years ago.

---

[13] In granting the state's motion to amend, the Superior Court reasoned that Cuero's "substantial rights [would not be] prejudiced by the mere fact that [his] potential punishment may have been increased due to the amendment," and that Cuero would "be in the same situation as he would have been prior to entry of the plea." The court borrowed this (inapposite) language almost verbatim from *Jackson* and *Alvarado*. *See Jackson*, 48 Cal. Rptr. 2d at 844 (relying on *Alvarado*).

*C. Allowing Cuero to withdraw his guilty plea was no remedy at all.*

The Superior Court also unreasonably applied clearly established federal law by failing to order specific performance of Cuero's plea agreement. A state court must supply a remedy for a breached plea agreement that comports with state contract law. *See Puckett*, 556 U.S. at 137; *Adamson*, 483 U.S. at 5 n.3; *Davis*, 446 F.3d at 962. Under California law, the remedy for breach must "repair the harm caused by the breach." *People v. Toscano*, 20 Cal. Rptr. 3d 923, 927 (Ct. App. 2004). "'When the breach [alleged] is a refusal by the prosecutor to comply with the agreement, specific enforcement would consist of an order directing the prosecutor to fulfill the bargain' and will be granted where there is a substantial possibility that specific performance will completely repair the harm caused by the prosecutor's breach." *In re Timothy N.*, 157 Cal. Rptr. 3d 78, 88 (Ct. App. 2013) (alteration in original) (quoting *People v. Kaanehe*, 19 Cal. 3d 1, 13 (1977)). Under *Buckley*, which we are bound to follow, in a situation like that here, where the state has already received the benefit it bargained for—a plea of guilty and a conviction—specific performance is the best remedy, unless the defendant, whose choice it becomes, "elect[s] instead to rescind the agreement and take his chances from there."[14] *Buckley*, 441 F.3d at 699 n.11.

---

[14] In this context, specific performance is necessary to maintain the integrity and fairness of the criminal justice system. *See, e.g.*, LaFave, *supra*, at § 21.2(e) ("When the breach was a failure by the prosecutor to carry out a promise which was fulfillable, then certainly the defendant's request for specific performance should be honored. . . . [T]here is no reason why a prosecutor who has failed to keep his fulfillable plea bargain promise should be allowed to force the defendant into a withdrawal of the plea and thus, presumably, a permanent breach of the bargain.") (footnotes

Moreover, that the state court permitted Cuero to withdraw his plea did not "repair the harm" caused by the prosecutor's breach. To the contrary: It exposed Cuero to the risk of going to trial and receiving an indeterminate 64 years to life sentence. This is hardly the "remedy" Cuero would have elected had he properly been given a choice. That Cuero was ultimately able to "bargain" for an indeterminate 25 years to life sentence does not alter the analysis; the state could not have lawfully pursued an indeterminate life sentence in the first place if it had not been allowed to breach the plea agreement. Again, Cuero had performed his part of the agreement by pleading guilty to the two felony charges, admitting a single prior strike, and conceding his four prison priors, giving the government the bargain it sought. Because Cuero had already performed, "fundamental fairness demands that the state be compelled to adhere to the agreement as well." *Brown*, 337 F.3d at 1162 (citation omitted). Cuero is

---

omitted); *State v. Tourtellotte*, 564 P.2d 799, 802 (1977) (Wash. 1977) (en banc) ("If a defendant cannot rely upon an agreement made and accepted in open court, the fairness of the entire criminal justice system would be thrown into question. No attorney in the state could in good conscience advise his client to plead guilty and strike a bargain if that attorney cannot be assured that the prosecution must keep the bargain[.]"). Although not dispositive, when *Santobello* was decided, "a majority of the court's members . . . [were] on record as favoring looking to defendant's wishes [as to choice of remedy]." Dennis A. Fischer, *Beyond Santobello—Remedies for Reneged Plea Bargains*, 2 U. San Fernando Valley L. Rev. 121, 125 (1973); *see also Santobello*, 404 U.S. at 267 (Douglas, J., concurring) ("[A] court ought to accord a defendant's preference considerable, if not controlling, weight inasmuch as the fundamental rights flouted by a prosecutor's breach of a plea bargain are those of the defendant, not of the State."); *id*. at 268 (Marshall, J., dissenting) (explaining that Justice Douglas's concurrence, coupled with the dissenting votes, appeared to create a majority in favor of honoring the defendant's preferred remedy).

therefore entitled to the benefit of his original bargain: a maximum sentence of 14 years, 4 months in prison.

### III.  Conclusion

The San Diego Superior Court failed to recognize that Cuero's entry and Judge Ervin's acceptance of Cuero's guilty plea pursuant to the written plea agreement was binding on both sides.  By allowing the prosecution to breach the agreement, reneging on the promise that induced Cuero's plea, the state court violated federal law clearly established by the Supreme Court in *Santobello*.  It further violated clearly established federal law requiring construction of the plea agreement under state contract law.  *See Adamson*, 483 U.S. at 5 n.3; *Buckley*, 441 F.3d at 697.  Even worse, the last reasoned decision of the state courts relied on two inapposite state law cases and failed to even acknowledge, much less apply, the well-established Supreme Court authority that dictated the contrary result.  This error had a "substantial and injurious effect" on Cuero, who is serving an indeterminate life sentence, the minimum term of which, 25 years, is well in excess of the 14 year, 4 month maximum promised by the government.  *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted).  Cuero is entitled to habeas relief.

Accordingly, the district court's judgment denying Cuero's petition for a writ of habeas corpus is reversed with instructions to issue a conditional writ requiring the state to resentence Petitioner in accordance with the original plea agreement within sixty days of the issuance of the mandate.

**REVERSED** and **REMANDED**.

APPENDIX A.1

U U U U 5

IN CUSTODY

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
## EAST COUNTY DIVISION

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, Plaintiff, | CT No. CE255082 |
| | DA No. MAM704 |
| v. | AMENDED |
| MICHAEL DANIEL CUERO, | COMPLAINT-FELONY |
| dob 03/14/72, Booking No. 05145189A; | |
| Defendant | |

FILED
OCT 2 8 2005

INFORMATION

Date: _____

### PC296 DNA TEST STATUS SUMMARY

| Defendant | DNA Testing Requirements |
|---|---|
| CUERO, MICHAEL DANIEL | DNA sample has been previously provided |

### CHARGE SUMMARY

| Count | Charge | Issue Type | Sentence Range | Special Allegations | Allegation Effect |
|---|---|---|---|---|---|
| 1 | VC23153(a) | Felony | 16-2-3/$5,000 | | |
| | CUERO, MICHAEL DANIEL | | | VC23560 | |
| | | | | PC12022.7(a) | +3 Yrs |
| 2 | PC12021(a)(1) | Felony | 16-2-3 | | |
| | CUERO, MICHAEL DANIEL | | | | |
| 3 | HS11550(a) | Misdemeanor | 90 Days-1 Yr | | |
| | CUERO, MICHAEL DANIEL | | | | |

PC1054.3      INFORMAL REQUEST FOR DISCOVERY

PC667(b) thru (i) and PC1170.12      "THREE STRIKES LAW"

The undersigned, certifying upon information and belief, complains that in the County of San Diego, State of California, the Defendant(s) did commit the following crime(s):

Page 1 of 5, Court Case No. CE255082

## CHARGES

### COUNT 1 - DRIVING UNDER INFLUENCE OF ALCOHOL OR DRUGS CAUSING INJURY, PRIOR DUI WITHIN 10 YEARS OF VIOLATION OF VC23153

On or about October 14, 2005, MICHAEL DANIEL CUERO did unlawfully, while under the influence of an alcoholic beverage and a drug and under their combined influence, drive a vehicle and in so driving did an act forbidden by law, to wit: VC 21658, VC 22107, and neglected a duty imposed by law which proximately caused bodily injury to another, in violation of VEHICLE CODE SECTION 23153(a).

And it is further alleged that within ten years of the commission of the above offense, said defendant MICHAEL DANIEL CUERO was convicted of the following separate violations committed in California or elsewhere,

a violation of VC23152(A), to wit: (Date of Offense) 05-05-1997, (Date of Conviction) 12-18-1998, (Docket No.) C181561, in the Superior Court, County of San Diego, State of California, within the meaning of VEHICLE CODE SECTIONS 23626 and 23560.

And it is further alleged that in the commission and attempted commission of the above offense the defendant, MICHAEL DANIEL CUERO, personally inflicted great bodily injury upon Jeffrey Feldman, not an accomplice to the above offense, within the meaning of PENAL CODE SECTION 12022.7(a).

### COUNT 2 - POSSESSION OF FIREARM BY A FELON

On or about October 14, 2005, MICHAEL DANIEL CUERO did unlawfully own, purchase, receive, and have in his/her possession and under his/her custody and control a firearm, the said defendant having theretofore been duly and legally convicted of a felony, in violation of PENAL CODE SECTION 12021(a)(1).

### COUNT 3 - UNDER INFLUENCE OF A CONTROLLED SUBSTANCE

On or about October 14, 2005, MICHAEL DANIEL CUERO did unlawfully use and become under the influence of a controlled substance , to wit: methamphetamine, in violation of HEALTH AND SAFETY CODE SECTION 11550(a).

# PRIORS

*MICHAEL DANIEL CUERO:*

### FIRST PRISON PRIOR

And it is further alleged that said defendant, MICHAEL DANIEL CUERO served a separate prison term for such offense(s), which under California law is punishable by imprisonment in state prison whether in California or elsewhere, and that he has not remained free of prison custody and free of the commission of an offense resulting in a felony(ies) conviction for five years subsequent to his release from prison for the felony(ies) below, within the meaning of PENAL CODE SECTION 667.5(b) AND 668.

| Charge | Date of Conviction | Court Number | Court | County | State |
|--------|--------------------|--------------| ------|--------|-------|
| PC459-T | 05/22/1991 | ECR4096 | Superior Court | San Diego | CA |
| PC460 | 05/22/1991 | ECR4096 | Superior Court | San Diego | CA |
| PC487.3 | 05/22/1991 | ECR4096 | Superior Court | San Diego | CA |
| VC10851 | 03/06/1992 | ECR5408 | Superior Court | San Diego | CA |
| PC245(A)(1) | 03/06/1992 | ECR5409 | Superior Court | San Diego | CA |

### SECOND PRISON PRIOR

And it is further alleged that said defendant, MICHAEL DANIEL CUERO served a separate prison term for such offense(s), which under California law is punishable by imprisonment in state prison whether in California or elsewhere, and that he has not remained free of prison custody and free of the commission of an offense resulting in a felony(ies) conviction for five years subsequent to his release from prison for the felony(ies) below, within the meaning of PENAL CODE SECTION 667.5(b) AND 668.

| Charge | Date of Conviction | Court Number | Court | County | State |
|--------|--------------------|--------------| ------|--------|-------|
| VC664-10851(A | 11/15/1994 | ECR10125 | Superior Court | San Diego | CA |

### THIRD PRISON PRIOR

And it is further alleged that said defendant, MICHAEL DANIEL CUERO served a separate prison term for such offense(s), which under California law is punishable by imprisonment in state prison whether in California or elsewhere, and that he has not remained free of prison custody and free of the commission of an offense resulting in a felony(ies) conviction for five years subsequent to his release from prison for the felony(ies) below, within the meaning of PENAL CODE SECTION 667.5(b) AND 668.

| Charge | Date of Conviction | Court Number | Court | County | State |
|--------|--------------------|--------------| ------|--------|-------|
| VC10851(A) | 12/18/1998 | SCE193890 | Superior Court | San Diego | CA |

# PRIORS (cont'd)

*MICHAEL DANIEL CUERO:*

FOURTH PRISON PRIOR

And it is further alleged that said defendant, MICHAEL DANIEL CUERO served a separate prison term for such offense(s), which under California law is punishable by imprisonment in state prison whether in California or elsewhere, and that he has not remained free of prison custody and free of the commission of an offense resulting in a felony(ies) conviction for five years subsequent to his release from prison for the felony(ies) below, within the meaning of PENAL CODE SECTION 667.5(b) AND 668.

| Charge | Date of Conviction | Court Number | Court | County | State |
|---|---|---|---|---|---|
| HS11377(A) | 07/31/2003 | CE232093 | Superior Court | San Diego | CA |

STRIKE PRIOR(S)

And it is further alleged pursuant to Penal Code sections 667(b) through (i), 1170.12, and 668 that the defendant, MICHAEL DANIEL CUERO, has suffered the following prior conviction(s) and juvenile adjudication(s), which are now serious or violent felonies under California law whether committed in California or elsewhere.

| Charge | Date of Conviction | Court Number | Court | County | State |
|---|---|---|---|---|---|
| PC459-T | 05/22/1991 | ECR4096 | Superior Court | San Diego | CA |
| PC460 | 05/22/1991 | ECR4096 | Superior Court | San Diego | CA |

NOTICE: Any defendant named on this complaint who is on criminal probation in San Diego County is, by receiving this complaint, on notice that the evidence presented to the court at the preliminary hearing on this complaint is presented for a dual purpose: the People are seeking a holding order on the charges pursuant to Penal Code Section 872 and simultaneously, the People are seeking a revocation of the defendant's probation, on any and all such probation grants, utilizing the same evidence, at the preliminary hearing. Defenses to either or both procedures should be considered and presented as appropriate at the preliminary hearing.

Pursuant to PENAL CODE SECTION 1054.5(b), the People are hereby informally requesting that defendant's counsel provide discovery to the People as required by PENAL CODE SECTION 1054.3.

The People reserve the right to amend the accusatory pleading to further allege any and all facts in aggravation in light of Blakely v. Washington (6/24/2004) ___ U.S. ___ [124 S.Ct. 2531, 2004 WL 1402697].

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT AND THAT THIS COMPLAINT, CASE NUMBER CE255082, CONSISTS OF 3 COUNTS.

Executed at El Cajon, County of San Diego, State of California, on October 27, 2005.

_____
COMPLAINANT

INFORMATION

BONNIE M. DUMANIS
District Attorney
County of San Diego
State of California
by:

_____
Date

_____
Deputy District Attorney

O'SCANNLAIN, Circuit Judge, dissenting:

Today, the Court erroneously orders federal habeas relief to a state prisoner on the basis of a non-existent plea agreement and irrelevant state contract law. Because the decision of the California Court of Appeal affirming Cuero's conviction was neither contrary to, nor an unreasonable application of, Supreme Court precedent, the district court's denial of the writ of habeas corpus should have been affirmed.

I respectfully dissent.

I

A

It is appropriate to recapitulate the relevant facts. While driving under the influence of methamphetamine, Michael Daniel Cuero veered off the road and crashed his car into Jeffrey Feldman, another driver who was standing outside his pickup truck on the side of the road. Feldman sustained severe injuries including a ruptured spleen, brain damage, and facial disfigurement. Cuero, a convicted felon prohibited from possessing a firearm, had a loaded firearm with him.

Over the next two weeks, the State filed a complaint and then an amended complaint against Cuero. The amended complaint charged two felonies (driving under the influence and possession of a firearm by a felon) and one misdemeanor (being under the influence of a controlled substance). The State alleged that Cuero had served four prior prison terms and that one of Cuero's prior convictions constituted a "strike" under California's "three strikes law." *See* Cal. Penal

Code § 667(b)–(i).[1]  Cuero initially pleaded "not guilty" to the charges in the amended complaint.

On December 8, 2005, Cuero appeared before the superior court to change his plea to guilty.  He signed a change of plea form, which stated that he had not been induced to enter the plea by any promises of any kind and that he had no deals with the State.[2]  After the court had accepted Cuero's plea on both felonies and his admissions to the "prison priors" and prior strike, the State moved to dismiss the misdemeanor count, and the court granted the motion.  A sentencing hearing was then scheduled.

B

According to the State, during the preparation of the sentencing memorandum for the superior court, the probation officer discovered that one of Cuero's prior convictions constituted a strike in addition to the single strike alleged in the first amended complaint.[3]  Prior to the scheduled

---

[1] Cuero actually had two prior strikes, but the State initially did not realize that fact.

[2] This form, which is the same form that the mistakenly majority calls a written plea agreement, is reproduced in Appendix A to this dissent.

[3] Cuero had been convicted of violating California Penal Code § 245(a)(1), which prohibits assault with a deadly weapon other than a firearm.  "Not all section 245(a)(1) violations constitute strikes under California law." *Gill v. Ayers*, 342 F.3d 911, 914 (9th Cir. 2003).  "[T]o qualify a section 245(a)(1) conviction as a strike, the prosecution must establish that the defendant 'personally inflicted great bodily injury on any person, other than an accomplice, or personally used a firearm' under section 1192.7(c)(8) or that he 'personally used a dangerous or deadly weapon' under section 1192.7(c)(23)" of the California Penal Code. *Id.*

sentencing hearing, the State moved under California Penal Code § 969.5(a) further to amend its complaint again to add the allegation of the second strike. Cuero opposed the motion. On February 2, 2006, the superior court granted the motion with the condition that Cuero would be permitted to withdraw his guilty plea, thus restoring all of his constitutional rights. The court then accepted for filing the second amended complaint alleging the additional strike.

On March 27, 2006, Cuero moved to withdraw his guilty plea entered on December 8, 2005. The court granted the motion and set aside that plea. As part of a "negotiated guilty plea," the State filed a third amended complaint omitting the felon-in-possession charge, and Cuero pleaded guilty to the charge of driving under the influence and admitted the two prior strikes. On April 20, 2006, the court sentenced Cuero to a term of 25 years to life pursuant to the plea agreement and pronounced judgment.

C

Cuero appealed to the California Court of Appeal. Pursuant to *People v. Wende*, 600 P.2d 1071 (Cal. 1979), and *Anders v. California*, 386 U.S. 738 (1967), Cuero's appointed appellate counsel filed a brief setting forth the evidence in the superior court, *presented no argument for reversal*, but asked the court of appeal to review the record for error. The brief directed the court's attention to two potential, but not arguable, issues: (1) "whether the trial court abused its

(internal alterations omitted). According to the State, Cuero's admission of a "personal use of a deadly weapon" allegation did not appear in the files it originally compiled in preparation for charging Cuero after the car crash.

discretion by permitting the prosecutor to amend the complaint to allege additional priors after [Cuero's] initial guilty plea" (citing *People v. Sipe*, 42 Cal. Rptr. 2d 266 (Ct. App. 1995); *People v. Superior Court* (*Alvarado*), 255 Cal. Rptr. 46 (Ct. App. 1989)); and (2) "whether the amendment constituted a breach of a plea agreement in violation of due process, entitling [Cuero] to specific performance of the original agreement" (citing *People v. Walker*, 819 P.2d 861 (Cal. 1991), *overruled in part by People v. Villalobos*, 277 P.3d 179 (Cal. 2012); *People v. Mancheno*, 654 P.2d 211 (Cal. 1982)).  The California Court of Appeal granted Cuero permission to file a brief on his own behalf, but he did not respond.  The court reviewed the entire record and the possible issues raised by counsel's *Wende/Anders* brief.  It concluded that they "disclosed no reasonably arguable appellate issue" and affirmed, noting that "[c]ompetent counsel has represented Cuero on this appeal."

In due course, Cuero brought this petition for habeas corpus in federal district court, where it was properly denied and he timely appealed.

## II

## A

As a reminder, it must be observed that a state prisoner's federal habeas petition "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to,
> or involved an unreasonable application
> of, clearly established Federal law, as

determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

28 U.S.C. § 2254(d). "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).

Contrary to the majority's suggestion that the § 2254(d) "exceptions authorize a grant of habeas relief," Maj. Op. at 7, these clauses prescribe conditions that are necessary, but not sufficient, for habeas relief under AEDPA. Other requirements exist. Most importantly for this case, § 2254(d) "does not repeal the command of § 2254(a) that habeas relief may be afforded to a state prisoner 'only on the ground' that his custody violates federal law." *Wilson v. Corcoran*, 562 U.S. 1, 5–6 (2010) (per curiam).

For purposes of § 2254(d)(1), "clearly established Federal law" is "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003) (citations omitted). It "includes only the holdings, as opposed to the dicta, of [the Supreme Court's] decisions." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (quoting *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)).

## B

A threshold problem with the opinion's analysis is its failure to identify the appropriate state-court decision before us. The majority concludes that we should "look through" the opinion of the California Court of Appeal on direct review to the earlier reasoned decision of the San Diego Superior Court. Maj. Op. at 8. However, the look-through doctrine only applies "[w]here there has been one reasoned state judgment rejecting a federal claim," *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991), and we cannot "look through" when the federal claim at issue was not "adjudicated on the merits" in the prior reasoned decision, *see* 28 U.S.C. § 2254(d); *Casey v. Moore*, 386 F.3d 896, 918 n.23 (9th Cir. 2004); *Medley v. Runnels*, 506 F.3d 857, 870–71 (9th Cir. 2007) (en banc) (Ikuta, J., concurring in part, dissenting in part) ("[W]e do not 'look through' to a state decision which does not address the constitutional claim."); *see also Murray v. Schriro*, 745 F.3d 984, 997 (9th Cir. 2014)[4] ("[W]e 'look through' to the last state-court decision that provides a reasoned explanation *capable of review*." (emphasis added)); *Ortiz v. Yates*, 704 F.3d 1026, 1034 (9th Cir. 2012) ("[W]e look through state-court summary denials to the last reasoned state-court opinion *on the claim at issue*." (emphasis added)).

Here, the superior court never did adjudicate the merits of Cuero's claim that the second amendment of the complaint constituted a breach of his plea agreement in violation of due process, entitling him to specific performance. In Cuero's brief in opposition to the motion to amend and in oral

---

[4] I note that the majority relies on one of *Murray*'s statements of law that has been undermined by a subsequent Supreme Court decision. *See Woodall*, 134 S. Ct. at 1706; *contra* Maj. Op. at 7–8.

argument on the motion, he exclusively argued that the superior court should exercise its discretion under state law to deny leave to amend.[5]  Cuero did not argue that the second amendment of the complaint would violate due process.  He did not argue that any plea agreement prohibited the second amendment of the complaint, nor that he was entitled to specific performance, nor that the state court was required to construe plea agreements in accordance with state contract law.  Indeed, Cuero argues to us that his trial counsel was ineffective for failing to raise Cuero's due process claim before the superior court.

Thus, Cuero never raised a due process claim, and the superior court did not decide one.  As a result, Cuero's claim that the second amendment of the complaint breached a pre-existing plea agreement and thereby violated due process was not adjudicated on the merits by the superior court.  Such claim was indeed adjudicated on the merits by a single state-court decision: the opinion of the California Court of Appeal

---

[5] Cuero cited only California Penal Code § 969.5(a), *Alvarado*, and *People v. Jackson*, 48 Cal. Rptr. 2d 838 (Ct. App.), *review granted and opinion superseded*, 914 P.2d 831 (Cal. 1996).  I do not understand why the majority criticizes the superior court for then addressing these sources of law in its decision.  Maj. Op. at 18–19 & n.13, 22.  The majority also suggests that it grants relief because the superior court did not "recognize[]" or "acknowledge" (unspecified) Supreme Court precedents in its decision.  Maj. Op. at 6, 22.  But a "state court need not cite or even be aware of [the Supreme Court's] cases under § 2254(d)."  *Richter*, 56 U.S. at 98 (citing *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam) ("Avoiding these pitfalls does not require citation of our cases—indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.")).

on direct review, the only dispositive "decision" with respect to which the petition for habeas corpus has been brought.**⁶**

C

Of course, "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. In such a situation, we must ask "what arguments or theories. . . could have supported[] the state court's decision" and then determine "whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of" the Supreme Court. *Id.* at 102. "Thus, when the state court does not supply reasoning for its decision, we are instructed to engage in an independent review of the record and ascertain whether the state court's decision was objectively unreasonable. Crucially, this is not a de novo review of the constitutional question, as even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Murray*, 745 F.3d at 996–97 (internal quotation marks and citations omitted).

"Adherence to these principles serves important interests of federalism and comity. AEDPA's requirements reflect a 'presumption that state courts know and follow the law.'" *Donald*, 135 S. Ct. at 1376 (quoting *Visciotti*, 537 U.S. at 24).

---

**⁶** This statement requires a slight caveat. With respect to Cuero's ineffective assistance of counsel claims, the relevant state-court decision is that of the California Court of Appeal on collateral review. While the majority does not reach the issue, I would affirm the denial of the writ with respect to such claims.

"When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Id.* (quoting *Richter*, 562 U.S. at 102–03.).

### III

In order to prevail in his petition for habeas corpus, Cuero must demonstrate (among other things) that: (1) on December 8, 2005, he had a plea agreement with terms that prohibited amendment of the complaint; (2) such plea agreement had constitutional significance before the entry of judgment, so that breaching it would violate due process; and (3) rescission of such plea agreement (withdrawal of the plea) was not a constitutionally acceptable remedy for the breach of the plea agreement. Contrary to the majority's analysis, under the Supreme Court's holdings in existence at the time of the California Court of Appeal's decision, he cannot.

### A

The majority erroneously concludes that, when Cuero initially pleaded guilty on December 8, 2005, he had a "written plea agreement" in which the government guaranteed that punishment would be no greater than 14 years, 4 months in prison. Maj. Op. at 4–5, 5, 6, 11–15 & nn. 8–9, 19, 21–22. To the contrary, fairminded jurists could readily conclude that Cuero's initial guilty plea was not induced by any agreement with the State, let alone an agreement that the State would never amend its complaint.

On December 8, 2005, Cuero signed a standard change of plea form.  As completed, that document states:

> I, the defendant in the above-entitled case, in support of my plea of Guilty/No Contest, personally declare as follows: . . .
>
> 2. I have not been induced to enter this plea by any promise or representation of any kind, except: *(State any agreement with the District Attorney.)*
>
> STC[7] – NO DEALS W/ PEOPLE.

Appendix A at 1 ¶ 2.  Cuero's initials appear next to the line indicating "STC – NO DEALS W/ PEOPLE." *Id.*  Cuero declared that he has "read, understood, and initialed each item above . . . and everything on the form . . . is true and correct." *Id.* at 3 ¶ 13.  In his plea colloquy that same day, Cuero confirmed that he had read, understood, and thoroughly reviewed with his attorney the plea form submitted, that he had signed and initialed the document, and that he had no questions about it.[8]

What about the "14 year, 4 month maximum promised by the government," Maj. Op. at 22, relied upon so heavily by the majority?  Such a promise is a figment of the majority's

---

[7] Based on the judge's statements at the plea hearing, it appears that "STC" stands for "sentence for the court."

[8] Because the majority and I cannot seem to agree on the basic facts of what was said at the plea hearing on December 8, 2005, I attach the transcript of that hearing as Appendix B to my dissent.

imagination. The only statement signed by the prosecutor on the change of plea form was the following: "The People of the State of California, plaintiff, by its attorney, the District Attorney for the County of San Diego, concurs with the defendant's plea of Guilty/No Contest as set forth above." Appendix A at 3. And at the hearing prosecutor Kristian Trocha said three words before Cuero entered his plea. Those words were "Kristian Trocha" to identify himself in his initial appearance, and "Yes" in the context of the following exchange:

> THE COURT: It is a sentence for the court, *no deals with the People.* His maximum exposure is 14 years, 4 months in state prison, 4 years on parole and a $10,000 fine. That's the most he could receive by way of this plea; true, Mr. Tamayo?
>
> MR. TAMAYO: It is.
>
> THE COURT: Mr. Trocha?
>
> [MR. TROCHA[9]]: Yes.

*See* Appendix B at 1, 2 (emphasis added). Thus, the court confirmed that there were "no deals with the People." And the prosecutor did not promise to refrain from ever doing

---

[9] The transcript actually says that someone named Dan Rodriguez said "Yes." Appendix B at 2. The record does not indicate who Dan Rodriguez is, so the court of appeal could easily have concluded that the prosecutor only said his name before Cuero entered his plea. Because it does not matter for purposes of this dissent, I assume that this was a transcription error and that Mr. Trocha was the person who responded to the court.

anything, such as amending the complaint, that would result in a longer sentence.  He simply agreed, as a descriptive matter, that 14 years, 4 months, was the maximum prison term Cuero was facing at the time.**[10]**

Both Cuero's appellate counsel's brief and the California Court of Appeal's decision imply that the initial plea was not induced by a plea agreement.  In his brief on appeal, Cuero's counsel stated that Cuero initially "pled guilty," with no mention of a plea agreement.  In contrast, the brief states that the second guilty plea was made "pursuant to a plea agreement" and sets forth the terms of the charge bargain.  Similarly, the Court of Appeal refers to the initial "guilty pleas" and the subsequent "negotiated guilty plea," which strongly implies that the court of appeal determined that no

---

**[10]** The majority suggests that, in the plea hearing, the State (1) "identified [the document in Appendix A] as the written plea agreement," Maj. Op. at 14–15 n.9; (2) "stood before Judge Ervin and expressed [its] intent to 'settle this case today,'" Maj. Op. at 11; and (3) "assented" "that the plea agreement was as to the charge and not to the specific sentence," Maj. Op. at 11–12.  It simply did not.  *See* Appendix B.  Nowhere in the attached transcript will the reader find the statements that the majority ascribes to the State.  One will search in vain for any reference by the Deputy District Attorney, or by the Deputy Public Defender, for that matter, to a "plea agreement."

The majority reasonably notes that the *superior court* referred to a "plea agreement," and it reasonably speculates that a "charge bargain" existed and that *Cuero* believed he would never face more than 14 years, 4 months in prison.  But the record contains no promise or agreement by *the State* to drop any charges or to refrain from amending the complaint.  In that regard, the majority confuses actions taken after the plea was accepted with promises to take such actions.  Trocha moved to "[d]ismiss in light of the plea."  Appendix B at 8.  But the State never indicated, in either the change of plea form or the plea hearing, that such dismissal was required by the terms of any agreement.

plea agreement existed for the initial plea. Such determination would not constitute an unreasonable determination of the facts.

Given Cuero's express declaration that he was not "induced to enter this plea by any promise or representation of any kind" and that there were no deals with the People, a fairminded jurist could readily conclude that the government did not promise Cuero anything, let alone that it would never amend its complaint.

B

Even if there were a plea agreement with terms that prohibited the State from amending its complaint, Cuero would still need to show that, under the Supreme Court's holdings at the time of the California Court of Appeal's decision, a fairminded jurist could not possibly conclude either that the plea agreement lacked constitutional significance before the entry of judgment or that rescission was a constitutionally acceptable remedy for a breach of the plea agreement.

In his briefing before our Court, Cuero contends that the California Court of Appeal's decision was an objectively unreasonable application of *Santobello v. New York*, 404 U.S. 257 (1971). Apparently unsatisfied with the arguments that Cuero made on his own behalf, the majority regrettably adds some selective quotation of *Mabry v. Johnson*, 467 U.S. 504 (1984), and *Ricketts v. Adamson*, 483 U.S. 1 (1987), to

support its grant of the writ.**[11]**  I respectfully suggest that the Court of Appeal's decision was neither contrary to, nor an unreasonable application of, *Santobello*, *Johnson*, or *Adamson*.

1

In *Santobello*, the Supreme Court addressed "whether the State's failure to keep a commitment concerning the sentence recommendation on a guilty plea required a new trial." 404 U.S. at 257–58.  There, as part of a plea bargain, the prosecution had agreed to make no recommendation as to the sentence, and Santobello had agreed to plead guilty to a lesser-included offense.  *Id.* at 258.  At sentencing, the prosecutor instead recommended the maximum sentence, which the judge imposed.  *Id.* at 259–60.  Upon certiorari, the Court vacated and remanded for the state court to consider the appropriate remedy for breach of the agreement.  *Id.* at 262–63.

As part of its reasoning, the Court indeed made the broad statement upon which the majority relies: "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* at 262.

---

**[11]** The majority's opinion, like much of our circuit precedent, vacillates between conclusions under the "contrary to" and "unreasonable application of" clauses of § 2254(d)(1). Maj. Op. at 10, 15 ("contrary to"); Maj. Op. at 15, 19 ("unreasonable application of").  We should be more precise.  The "'contrary to' and 'unreasonable application of' clauses in § 2254(d)(1) are distinct and have separate meanings." *Moses v. Payne*, 555 F.3d 742, 751 (9th Cir. 2009) (citing *Andrade*, 538 U.S. at 73–75).

However, this general, isolated statement does not, by itself, constitute the entire holding of *Santobello*.[12] With respect to the proper remedy for the government's breach, the Court remanded to the state court and held:

> The ultimate relief to which petitioner is entitled we leave to the discretion of the state court, which is in a better position to decide whether the circumstances of this case require only that there be specific performance of the agreement on the plea, in which case petitioner should be resentenced by a different judge, or whether, in the view of the state court, the circumstances require granting the relief sought by petitioner, i.e., the opportunity to withdraw his plea of guilty.

*Id.* at 262–63. The Court noted that if "the state court decides to allow withdrawal of the plea, the petitioner will, of course, plead anew to the original charge on two felony counts." *Id.* at 263 n.2.

Thus, contrary to the majority's analysis, the Court in *Santobello* did not hold that literally every plea agreement offered by the prosecution and accepted by the defendant is enforceable by specific performance. Rather, the Court held that, when a trial court's judgment of conviction is based on a plea induced by a promise later broken by the state, the judgment must be vacated. The Court further held that the

---

[12] Accurate identification of the Supreme Court's holdings is a critical step in our analysis under 28 U.S.C. § 2254(d)(1) because "clearly established Federal law" includes only the holdings, as opposed to the dicta, of the Supreme Court's decisions. *See Donald*, 135 S. Ct. at 1376.

ultimate relief would be left "to the discretion of the state court, which [was] in a better position to decide whether the circumstances of [the] case" required specific performance or withdrawal of the guilty plea. *Id.* at 263.

2

The majority's grant of the petition rests entirely on the premise that "[u]nder clearly established Supreme Court law, Cuero stood convicted and his plea agreement became binding the moment the first Superior Court judge accepted his guilty plea." Maj. Op. at 8–9. *Johnson* undercuts such premise.

In *Johnson*, the Supreme Court addressed "whether a defendant's acceptance of a prosecutor's proposed plea bargain creates a constitutional right to have the bargain specifically enforced." 467 U.S. at 505. There, the prosecutor proposed that, in exchange for a plea of guilty, the prosecutor would recommend a 21-year sentence served concurrently with other sentences. *Id.* at 505–06. When the defendant's counsel called the prosecutor and communicated acceptance of the offer, the prosecutor told defense counsel "that a mistake had been made and withdrew the offer." *Id.* at 506. The prosecutor then made a second offer to recommend a 21-year sentence to be served consecutively to the other sentences, which the defendant ultimately accepted. *Id.* "In accordance with the plea bargain, the state trial judge imposed a 21-year sentence to be served consecutively to the previous sentences." *Id.*

In its analysis, the Court reasoned:

> A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest. It is the ensuing guilty plea that implicates the Constitution. Only after respondent pleaded guilty was he convicted, and it is that conviction which gave rise to the deprivation of respondent's liberty at issue here.

*Id.* at 507–08 (footnote omitted). The majority completely ignores the reasonable conclusion that a fairminded jurist could draw from the first sentence of this passage: a "plea bargain . . . is without constitutional significance . . . until embodied in the judgment of a court." *Id.*[13] In other words, it is the judgment, not the acceptance of a guilty plea, that "seals the deal between the state and the defendant." *Contra* Maj. Op. at 9.[14]

---

[13] The majority distorts this passage by selectively pairing three words from the second sentence with three words from the first sentence: "A defendant's guilty plea thus 'implicates the Constitution,' transforming the plea bargain from a 'mere executory agreement' into a binding contract." Maj. Op. at 9. However, such tortured paraphrasing does not remotely reflect the passage above or the holding of *Johnson*.

[14] Some confusion could arise from the Court's use of "convicted" and "conviction" in this passage and in *Boykin v. Alabama*, 395 U.S. 238, 242 (1969), upon which the majority relies. I note that the word "conviction" has multiple meanings about which fairminded jurists can disagree. "It is certainly correct that the word 'conviction' can mean either the finding of guilt or the entry of a final judgment on that finding." *Deal v. United States*, 508 U.S. 129, 131 (1993); *see also id.* at 143–46 (Stevens, J., dissenting). Here, the Supreme Court used "conviction" in the latter

The *Johnson* Court further explained that "only when it develops that the defendant was not fairly apprised of its consequences can his plea be challenged under the Due Process Clause." 467 U.S. at 509. The Court then applied that rule:

> [Johnson's] plea was in no sense induced by the prosecutor's withdrawn offer; unlike Santobello, who pleaded guilty thinking he had bargained for a specific prosecutorial sentencing recommendation which was not ultimately made, at the time respondent pleaded guilty he knew the prosecution would recommend a 21-year consecutive sentence. [Johnson] does not challenge the District Court's finding that he pleaded guilty with the advice of competent counsel and with full awareness of the consequences—he knew that the prosecutor would recommend and that the judge could impose the sentence now under attack.

*Id.* at 510.

The Court concluded that Johnson's "inability to enforce the prosecutor's offer is without constitutional significance." *Id.* Johnson "was not deprived of his liberty in any

---

sense, *i.e.* the entry of a final judgment on a finding of guilt. Having just stated that a plea bargain "does not deprive an accused of liberty or any other constitutionally protected interest" "until embodied in the judgment of a court," the Court did not state two sentences later that a guilty plea gives rise to the deprivation of a defendant's liberty *before the entry of judgment*. And, even if this understanding of the Court's use of "conviction" in *Johnson* is wrong, it is not objectively unreasonable.

fundamentally unfair way. [He] was fully aware of the likely consequences when he pleaded guilty; it is not unfair to expect him to live with those consequences now." *Id.* at 511.

Thus, the Court in *Johnson* held that a defendant's inability to enforce a plea offer withdrawn before the entry of judgment is without constitutional significance, not that every breach of a plea agreement after a guilty plea violates the Constitution. Consequently, there is no due process violation so long as the prosecution fulfills the promises that induced the plea upon which the judgment of conviction is based.

More importantly, *Johnson* clarified the holding in *Santobello*. The Court noted that "*Santobello* expressly declined to hold that the Constitution compels specific performance of a broken prosecutorial promise as the remedy for such a plea" and that "permitting Santobello to replead was within the range of constitutionally appropriate remedies." *Id.* at 510–11 n.11 (citing *Santobello*, 404 U.S. at 262–63; *id.* at 268–69 (Marshall, J., concurring in part and dissenting in part)). "It follows that [Johnson's] constitutional rights could not have been violated. Because he pleaded after the prosecution had breached its 'promise' to him, he was in no worse position than Santobello would have been had he been permitted to replead." *Id.*

3

The majority also concludes, erroneously, that the state court was "constitutionally obligated to construe the agreement in accordance with state contract law" and that a "state court must supply a remedy for a breached plea agreement that comports with state contract law." Maj. Op. at 18, 20. Although the majority relies heavily on *Adamson*

for these propositions, I respectfully suggest that case does not support, let alone require, such conclusions.

In *Adamson*, the Supreme Court addressed "whether the Double Jeopardy Clause bars the prosecution of [a defendant] for first-degree murder following his breach of a plea agreement under which he had pleaded guilty to a lesser offense, had been sentenced, and had begun serving a term of imprisonment." *Adamson*, 483 U.S. at 3.[15]  There, the Arizona Supreme Court held that a written plea agreement[16] required Adamson to testify at the retrial of the other two individuals, that he violated the terms of the plea agreement by refusing to testify at the retrials, and that the terms of the plea agreement required the original first-degree murder charge to be reinstated automatically. *Id.* at 5.  The Supreme Court held that the subsequent prosecution did not violate the Double Jeopardy Clause.  It reasoned that "terms of the agreement could not be clearer: in the event of [Adamson's] breach occasioned by a refusal to testify, the parties would be returned to the *status quo ante*, in which case [Adamson] would have *no* double jeopardy defense to waive." *Id.* at 10. Thus, the Court held in *Adamson* that the Double Jeopardy Clause does not bar a state from vacating a judgment of conviction and reinstating criminal charges pursuant to the express terms of a plea agreement.

---

[15] Given this description, one might get the sense that the *holding* of *Adamson* is unlikely to bear on the instant case.

[16] Our Court published the entirety of the eighteen-paragraph plea agreement in an appendix.  *See Adamson v. Ricketts*, 789 F.2d 722, 731–33 (9th Cir. 1986), *rev'd*, 483 U.S. 1.  Contrast that plea agreement with the change of plea form in this case, which expressly states that there was no plea agreement.  *See* Appendix A at 1 ¶ 2.

The majority does not rely on the holding of *Adamson* for its erroneous propositions, but rather on part of a sentence in dictum contained in a footnote of the Court's opinion. In footnote 3, the Court addressed Adamson's contention that the Arizona Supreme Court had misconstrued the terms of the plea agreement:

> We will not second-guess the Arizona Supreme Court's construction of the language of the plea agreement. While we assess independently the plea agreement's effect on respondent's double jeopardy rights, *the construction of the plea agreement and the concomitant obligations flowing therefrom are, within broad bounds of reasonableness, matters of state law*, and we will not disturb the Arizona Supreme Court's reasonable disposition of those issues. The dissent's discourse on the law of contracts is thus illuminating but irrelevant. The questions whether the plea agreement obligated the respondent to testify at the retrial of Dunlap and Robison and, if so, whether the respondent breached this duty are matters appropriately left to the state courts. . . .

*Adamson*, 483 U.S. at 6 n.3 (emphasis added to the clause upon which the majority relies). As the Supreme Court eloquently once stated in an unrelated context: "Most importantly, the statement is pure dictum. It is dictum contained in a rebuttal to a counterargument. And it is *unnecessary* dictum even in that respect." *Kirtsaeng v. John Wiley & Sons, Inc.*, 133 S. Ct. 1351, 1368 (2013).

Even if not dictum, the footnote has been misinterpreted by the majority. The majority, consistent with precedent of our circuit,[17] focuses solely on the statement that "the construction of the plea agreement and the concomitant obligations flowing therefrom are, within broad bounds of reasonableness, matters of state law." Maj. Op. at 15. However, in context it is clear that the Supreme Court was not stating that state courts are "constitutionally obligated to construe the agreement in accordance with state contract law" and that they violate the Constitution by failing to do so. Maj. Op. at 18. And the footnote does not remotely support the contention that a state court violates the Constitution if it does not "supply a remedy for a breached plea agreement that comports with state contract law." Maj. Op. at 20. Quite the opposite. Respecting important interests of federalism and comity, the Court explained that the construction of plea agreements and whether a breach has occurred are matters of state law which are "appropriately left to the state courts." *Adamson*, 483 U.S. at 6–7 n.3. Federal courts must not "second-guess[] the finding of a breach" and they have no "license to substitute a federal interpretation of the terms of a plea agreement for a reasonable state interpretation." *Id.* Thus, the *Adamson* footnote, upon which the majority relies, is about deference to state courts, not about imposing new constitutional requirements on state courts.

---

[17] *Buckley v. Terhune*, 441 F.3d 688, 694–95 (9th Cir. 2006) (en banc); *Davis v. Woodford*, 446 F.3d 957, 962 (9th Cir. 2006). As discussed below, we should not follow these decisions because they are irreconcilable with intervening decisions of the Supreme Court. *See infra* note 20.

C

The California Court of Appeal's decision was not "contrary to" *Santobello*, *Johnson*, or *Adamson*. "Because none of [the Supreme Court's] cases confront 'the specific question presented by this case,' the state court's decision could not be 'contrary to' any holding from" the Supreme Court. *Donald*, 135 S. Ct. at 1377 (quoting *Lopez v. Smith*, 135 U.S. 1, 4 (2014) (per curiam)).

In *Santobello*, the defendant pleaded guilty in reliance upon the promises in the prosecution's original offer, the prosecution broke a promise contained in its original offer, and the court entered judgment on the basis of the plea induced by the unfulfilled promise. Unlike *Santobello*, here the superior court's judgment was not entered on the basis of the initial plea, purportedly induced by unfulfilled promises. Rather, judgment was entered on the basis of the subsequent plea, which was induced by promises that have been fulfilled. In *Johnson*, the prosecution withdrew its original offer before the defendant pleaded guilty. Unlike *Johnson*, here the prosecutor purportedly breached a plea agreement after the defendant pleaded guilty. Finally, *Adamson* does not remotely resemble this case. There, the defendant breached his plea bargain, and the question was whether or not the Double Jeopardy Clause prohibited the state from vacating the conviction and reinstating criminal charges.

Therefore, *Santobello*, *Johnson*, and *Adamson* do not address the specific question presented by this case: whether the Constitution requires specific performance of a plea bargain after a defendant has pleaded guilty but before the court has entered judgment. As a result, the state court's

decision could not be "contrary to" any holding from the Supreme Court.  *See Donald*, 135 S. Ct. at 1377.

## D

Nor was the California Court of Appeal's decision an "unreasonable application of" the Court's holdings in *Santobello*, *Johnson*, and *Adamson*.  As discussed above, fairminded jurists could easily conclude that Cuero's initial plea did not rest "on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration." *Santobello*, 404 U.S. at 262; *see* Appendix A at 1 ¶ 2 ("I have not been induced to enter this plea by any promise or representation of any kind, except: . . . NO DEALS W/ PEOPLE.").**[18]**

Even assuming that the State did make a promise not to amend its complaint, fairminded jurists could readily conclude that, under *Johnson*, Cuero's inability to enforce the original plea agreement, which was withdrawn before the entry of judgment, is "without constitutional significance." *Johnson*, 467 U.S. at 507–08, 510.  Moreover, fairminded jurists could conclude that, if the prosecution did breach some binding agreement with Cuero, "permitting [Cuero] to replead was within the range of constitutionally appropriate

---

**[18]** Without any plea agreement to construe, *Adamson*'s purported requirement to construe the plea agreement in accordance with state contract law has no application here.

remedies." *Johnson*, 467 U.S. at 510–11 n.11 (explaining *Santobello*); *Santobello*, 404 U.S. at 263 & n.2.[19]

Therefore, the state court's ruling on the claim presented here was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. As a result, the state court's ruling was not an unreasonable application of *Santobello*, *Johnson*, or *Adamson.*

IV

Perhaps the majority's faulty analysis can best be explained by its erroneous reliance on (1) perceived errors of state law; (2) circuit precedent (to bridge the gap between the Supreme Court's holdings and this case); (3) a Supreme Court decision that post-dates the California Court of Appeal's decision; and (4) issues of law framed at the highest levels of generality. Making matters worse, the majority misconstrues many of the sources of law upon which it improperly relies.

A

1

The majority erroneously relies on perceived errors of state law. Maj. Op. at 15–22 & n.10; *see Swarthout v. Cooke*,

---

[19] *Adamson* indirectly reinforces this conclusion with its repeated emphasis that returning the defendant to the *status quo ante*—*i.e.*, restoring his trial rights fully—resulted in no double jeopardy violation. *See Adamson*, 483 U.S. at 10–11.

562 U.S. 216, 219–22 (2011) (per curiam); *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (per curiam); *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Rose v. Hodges*, 423 U.S. 19, 21–22 (1975) (per curiam).

Specifically, it holds that the writ must issue because the state court failed "to interpret Cuero's plea agreement consistently with California contract law" and failed to "supply a remedy for a breached plea agreement that comports with state contract law." Maj. Op. at 20. "But it is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts. The habeas statute unambiguously provides that a federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Corcoran*, 562 U.S. at 5 (quoting 28 U.S.C. § 2254(a)). The Supreme Court has "repeatedly held that 'federal habeas corpus relief does not lie for errors of state law.'" *Id.* (quoting *McGuire*, 502 U.S. at 67). "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Id.* (quoting *McGuire*, 502 U.S. at 67–68) (alteration omitted).

The majority protests that these cases "do not speak to the situation where, as here, the Supreme Court has clearly held that the federal constitutional due process right is itself defined by reference to principles of state law." Maj. Op. at 16 n.10. One would expect a citation to Supreme Court precedent to follow such a strong statement, but none exists. The majority cites our *Buckley* case, which cites *Adamson*. Maj. Op. at 16 n.10. But *Adamson* held no such thing. In fact, *Adamson* does not contain the words "due process"

*anywhere* in the Court's opinion. "No opinion of [the Supreme Court] supports converting California's [contract law] into a substantive federal requirement." *Cooke*, 562 U.S. at 220–21.[20]

2

Even if the court could grant habeas relief on the basis of state law, the majority misconstrues California state law.

California state law did not prohibit the second amendment of the complaint. Several provisions of the California Penal Code expressly permit a prosecutor to amend an information or complaint. *See* Cal. Penal Code §§ 969a, 969.5(a), 1009. "Under section 1009, the People may amend an information without leave of court prior to entry of a defendant's plea, and the trial court may permit an amendment of an information at any stage of the proceedings." *People v. Lettice*, 163 Cal. Rptr. 3d 862, 868 (Ct. App. 2013). Sections 969a and 969.5(a) specifically deal with amendment of the complaint to add allegations of prior felonies, and § 969.5(a), upon which the State relied, addresses amendment of a complaint after a guilty plea:

---

[20] Just as we did in *Cooke*, our Court in *Brown v. Poole*, 337 F.3d 1155 (2003), *Buckley*, and *Davis* relied upon a perceived error of state law to conclude that the federal Due Process Clause was violated. Accordingly, with respect to its analysis regarding the required remedy, the reasoning of these cases has been undermined to the point that it is clearly irreconcilable with *Corcoran* and *Cooke*. *See Lair v. Bullock*, 798 F.3d 736, 745 (9th Cir. 2015) (citing *Miller v. Gammie*, 335 F.3d 889, 892–93 (9th Cir. 2003) (en banc)). *Brown*, *Buckley*, and *Davis* are of no help to the majority's analysis.

> Whenever it shall be discovered that a
> pending complaint to which a plea of guilty
> has been made under Section 859a does not
> charge all prior felonies of which the
> defendant has been convicted either in this
> state or elsewhere, the complaint may be
> forthwith amended to charge the prior
> conviction or convictions and the amendments
> may and shall be made upon order of the
> court.

Cal. Penal Code § 969.5(a). None of these statutes indicate that a prosecutor's ability to amend the information is limited to situations in which a plea agreement has been entered.

In *People v. Valladoli*, the California Supreme Court interpreted both § 969a and former § 969 ½ in determining whether an information could be amended to allege prior felonies *after* a defendant was found guilty at trial. 918 P.2d 999 (Cal. 1996). Discussing former § 969 ½, the predecessor to § 969.5(a), the court said that if the defendant had "pleaded guilty before the magistrate under section 859a, . . . the express terms of section 969 ½ would have permitted the People to amend the information to charge his prior convictions after the guilty plea." *Id.* at 1005; *see also People v. Tindall*, 14 P.3d 207, 212 (Cal. 2000) (citing *Valladoli* for this proposition). The court continued, "An obvious motivating force underlying section 969 ½ is to prevent one accused of a crime from quickly pleading guilty before a magistrate and thereby limiting the amount of time the prosecutor has to investigate, discover, and charge the accused's prior felony convictions." *Valladoli*, 918 P.2d at 1005.

Thus, the state statutory scheme and *Valladoli* permit a prosecutor to request to file an amended complaint to allege prior convictions after entering a plea agreement. The majority fails to cite any California case which has definitively held that a prosecutor may not amend a complaint after the court accepts a plea agreement.[21]

Ultimately, the Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam). Here, both the superior court and the appellate court determined that amendment of the complaint was permissible under state law. We must defer to those interpretations and conclude that there was no error of state law. Rather than deferring, the majority's decision severely undermines the California Legislature's determination, in enacting sections 969.5(a) and 1009, that prosecutors should have the ability, with the approval of the court, to amend a complaint after a plea to allege all prior felonies.

---

[21] In *Lettice*, the California Court of Appeal was presented with a case similar to this one, but did not decide this issue. On appeal, because the defendant did not argue that the prosecutor was precluded from filing an amended information after entering the plea agreement, the court of appeal expressly did not decide that issue. *Lettice*, 163 Cal. Rptr. 3d at 871 n.12. The court of appeal remanded to the superior court with instructions to exercise its discretion to determine whether to permit the amendment of the complaint. *Id.* at 873.

B

1

The majority erroneously relies (heavily) on circuit precedent to bridge the gap between the Supreme Court's cases and this one. *See Glebe v. Frost*, 135 S. Ct. 429, 431 (2014) (per curiam); *Lopez v. Smith*, 135 S. Ct. 1, 4 (2014) (per curiam); *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450–51 (2013) (per curiam); *Parker v. Matthews*, 132 S. Ct. 2148, 2155–56 (2012) (per curiam); *Renico v. Lett*, 559 U.S. 766, 778–79 (2010).

Specifically, the majority relies on circuit precedent for the following propositions, which are not supported by the Supreme Court's decisions:

> (1) The "federal constitutional due process right is itself defined by reference to principles of state law," Maj. Op. at 16 n.10 (citing *Buckley*, 441 F.3d at 695); a state court is "constitutionally obligated to construe the [plea] agreement in accordance with state contract law." Maj. Op. at 18 (citing *Buckley*, 441 F.3d at 696); "[u]nder AEDPA, we . . . must consider whether the [state court] decision is consistent with a proper application of state contract law in interpreting the plea agreement . . . ." Maj. Op. at 15 (quoting *Davis*, 446 F.3d at 962).

> (2) "[W]here the state has already received the benefit it bargained for—a plea of

guilty and a conviction—specific performance is the best remedy, unless the defendant, whose choice it becomes, 'elect[s] instead to rescind the agreement and take his chances from there.'" Maj. Op. at 20 (quoting *Buckley*, 441 F.3d at 699 n.11).

(3) "Because Cuero had already performed, 'fundamental fairness demands that the state be compelled to adhere to the agreement as well.'"   Maj. Op. at 21 (quoting *Brown*, 337 F.3d at 1162).

Take the first proposition.  As discussed above, *Adamson* does not even contain the words "due process," so the notion that the "federal constitutional due process right is itself defined by reference to principles of state law" comes solely from *Buckley*.  Similarly, footnote 3 of *Adamson* says nothing about state *contract* law.  *See Adamson*, 483 U.S. at 6 n.3 (construction and breach determinations are "matters of state law").  So the majority's restriction of the relevant state law to contract law comes solely from circuit precedent in *Buckley* and *Davis*.  *See, e.g.*, Maj. Op. at 18 n.12 (rejecting argument under § 969.5(a) because that section "is irrelevant to the interpretation of a court-approved plea agreement under state contract principles").   Finally, no Supreme Court decisions remotely support the notion that specific performance is required when a defendant has pleaded guilty and the court has accepted that plea.  Such notions are inventions of our circuit.

The Supreme Court has "repeatedly emphasized [that] circuit precedent does not constitute 'clearly established

Federal law, as determined by the Supreme Court.'" *Frost*, 135 S. Ct. at 431 (quoting 28 U.S.C. § 2254(d)(1)). "It therefore cannot form the basis for habeas relief under AEDPA." *Matthews*, 132 S. Ct. at 2155. And "Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme Court] has not announced.'" *Smith*, 135 S. Ct. at 4 (quoting *Rodgers*, 133 S. Ct. at 1450). In the past three years, the Supreme Court has caught us three times trying to evade this rule. *See Frost*, 135 S. Ct. at 431 ("The Ninth Circuit acknowledged this rule, but tried to get past it . . . ."); *Smith*, 135 S. Ct. at 4 ("The Ninth Circuit attempted to evade this barrier . . . ."); *Rodgers*, 133 S. Ct. at 1450–51. It is unwise to think that we will slip through this time around.

2

Even if the majority could properly rely on our decisions in *Brown*, *Buckley*, and *Davis*, those cases not compel the conclusion that the majority reaches.

For instance, *Brown* and *Buckley* acknowledged that there are "two available remedies at law for the breach of [a] plea agreement: withdrawal of [the] plea (i.e., rescission of the contract) and specific performance." *Buckley*, 441 F.3d at 699; *Brown*, 337 F.3d at 1161. In choosing between those remedies in *Buckley*, the en banc court "express[ed] no view on what the proper remedy would be in a case with other facts." *Id.* at 699 n.11.

Cuero's circumstances are readily distinguishable from those in *Brown* and *Buckley*. In both cases, we ordered specific performance because rescission of the contract was "impossible" under the circumstances and the petitioners

could not "conceivably be returned to the status quo ante." *Brown*, 337 F.3d at 1161; *Buckley*, 441 F.3d at 699. The petitioners had "paid in a coin that the state cannot refund" by testifying and/or serving their bargained-for sentences. *Buckley*, 441 F.3d at 699 (quoting *Brown*, 337 F.3d at 1161). Here, when the superior court granted permission to amend the complaint, Cuero had not performed in a way that could not be undone. Instead, to the extent Cuero had performed, the "coin" he paid was fully refunded when his relinquished trial rights were fully restored. Thus, specific performance was not required by our precedents because rescission was still possible for Cuero.

In addition, Cuero's case differs from *Davis*, *Buckley*, and *Brown* because the petitioners were incarcerated on the basis of pleas induced by plea agreements that the state breached. *See Davis*, 446 F.3d at 959–63; *Buckley*, 441 F.3d at 691–93; *Brown*, 337 F.3d at 1157–58. Thus, those cases were much closer to *Santobello*. Here, the initial plea, purportedly induced by a plea agreement which the state breached, was withdrawn and does not form the basis of Cuero's incarceration. Cuero's case is much closer to *Johnson*. He "was not deprived of his liberty in any fundamentally unfair way. [He] was fully aware of the likely consequences when he pleaded guilty; it is not unfair to expect him to live with those consequences now." *Johnson*, 467 U.S. at 511.

## C

### 1

The majority erroneously relies upon a Supreme Court opinion—and numerous other authorities—issued *after* all of the state court decisions that related to Cuero. *See Greene v.*

*Fisher*, 132 S. Ct. 38, 44–45 (2011); *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011); *Andrade*, 538 U.S. at 71–72; *see also Woodall*, 134 S. Ct. at 1706.

Specifically, the panel relies on *Puckett v. United States*, 556 U.S. 129 (2009), for the following propositions:

> (1) "A state court must supply a remedy for a breached plea agreement that comports with state contract law." Maj. Op. at 20 (citing *Puckett*, 556 U.S. at 137).[22]

> (2) The purported breach of Cuero's plea agreement was "undoubtedly a violation of the defendant's rights." Maj. Op. at 6 (quoting *Puckett*, 556 U.S. at 136).

> (3) "[P]lea bargains are essentially contracts." Maj. Op. at 15 (quoting *Puckett*, 556 U.S. at 137).

Section 2254(d)(1) "requires federal courts to focus on what a state court knew and did, and to measure state-court decisions against [the Supreme Court's] precedents *as of the time the state court renders its decision*." *Greene*, 132 S. Ct. at 44 (internal alteration and quotation marks omitted) (emphasis in original). "Obviously, a state-court decision cannot be contrary to clearly established Federal law that was not yet in existence." *Murray*, 745 F.3d at 997. Thus,

---

[22] The majority also cites *Adamson*, 483 U.S. at 5 n.3, and *Davis*, 446 F.3d at 962, for this proposition. Maj. Op. at 20. None of the authorities cited support the majority's contention, let alone clearly establish such contention.

because *Puckett* was issued after the California Court of Appeal's decision, it was not "clearly established Federal law" at the time the state court rendered its decision. Consequently, the majority cannot rely on *Puckett*.

The majority also relies on a number of other authorities issued after the state court's decision to state the principles of law that the state court should have applied. *See* Maj. Op. at 9 (relying on *Doe v. Harris*, 640 F.3d 972, 975 (9th Cir. 2011)); *id.* at 16 (relying on *People v. Segura*, 188 P.3d 649, 656 (Cal. 2008)); *id.* at 17 (relying on *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 791 (9th Cir. 2012)); *id.* at 20 (relying on *In re Timothy N.*, 157 Cal. Rptr. 3d 78, 88 (Ct. App. 2013)); *id.* at 20–21 n.14 (relying on 5 Wayne R. LaFave et al., *Criminal Procedure* § 21.2(e) (4th ed. 2015)). This reliance, too, was impermissible, for the state court cannot be expected to apply rules of law stated in authorities not yet in existence.

2

Even if the majority could rely on *Puckett*, that case cannot support the weight of the majority's argument.

The Supreme Court in *Puckett* stated that "[w]hen a defendant agrees to a plea bargain, the Government takes on certain obligations. If those obligations are not met, the defendant is entitled to seek a remedy, which might in some cases be rescission of the agreement, allowing him to take back the consideration he has furnished, i.e., to withdraw his plea." 556 U.S. at 137. Clearly, withdrawal of the plea is a constitutionally permissible remedy, and Cuero received that remedy. The *Puckett* Court did not remotely suggest that the determination of which remedy to afford is a matter of state

contract law.  Also, the *Puckett* Court acknowledged that, although "plea bargains are essentially contracts," "the analogy may not hold in all respects."  *Id.*  This undermines the majority's proposition that only state contract law can be used to determine whether amendment of the complaint was permitted.

### D

Finally, the majority erroneously frames legal issues at the highest levels of generality.  *See Donald*, 135 S. Ct. at 1377; *Smith*, 135 S. Ct. at 4; *Nevada v. Jackson*, 133 S. Ct. 1990, 1994 (2013) (per curiam); *cf. City & County of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1775–76 (2015) ("We have repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011))).  "By framing [the Supreme Court's] precedents at such a high level of generality, a lower federal court could transform even the most imaginative extension of existing case law into 'clearly established Federal law, as determined by the Supreme Court.'" *Jackson*, 133 S. Ct. at 1994 (quoting 28 U.S.C. § 2254(d)(1)).  Such an "approach would defeat the substantial deference that AEDPA requires." *Id.*

The majority can only grant habeas relief if the Supreme Court's cases clearly establish that a defendant has a due process right to specific performance of a plea agreement before the entry of judgment.  But none of the Supreme Court's cases addresses that specific issue.  *See Smith*, 135 S. Ct. at 4.

Instead, the best the majority can do is to point to *Adamson* for the general proposition that "the construction of [a] plea agreement and the concomitant obligations flowing therefrom are, within broad bounds of reasonableness, matters of state law." 483 U.S. at 6 n.3. "This proposition is far too abstract to establish clearly the specific rule [Cuero] needs." *Smith*, 135 S. Ct. at 4.

The majority treats the door supposedly opened by *Adamson*'s general proposition as license to engage freely in de novo determination of what California contract law requires, both for the construction of the agreement and the remedy for a breach. Maj. Op. at 15–22. Again, however, no California cases establish that specific performance is required when the State amends its complaint after entry of a plea but before judgment. As a result, the majority is forced to frame principles of California law at the highest level of generality in order to conclude that specific performance is required. The majority rests its decision on the very general principle that "the remedy for breach must 'repair the harm caused by the breach.'" Maj. Op. at 20 (quoting *People v. Toscano*, 20 Cal. Rptr. 3d 923, 927 (Ct. App. 2004)). Such a general proposition obviously does not establish, under California law, that specific performance was the only remedy in this situation that could repair the harm caused by the breach.

To supply that final conclusion, the majority relies purely on its own de novo, *ipse dixit* analysis. Note that the key last paragraph before its conclusion section contains only a single citation to a source of law, and that citation does not establish that specific performance is required here. Ultimately, the court's decision rests on its own determinations that it would be unfair not to require specific performance, Maj. Op. at 21,

and that "specific performance is necessary to maintain the integrity and fairness of the criminal justice system," Maj. Op. at 20–21 n.14.**[23]**  These conclusions are not dictated by state or federal law.

V

For the foregoing reasons, I respectfully conclude that the majority erroneously orders reversal of the district court and grant of the writ.  In accordance with Supreme Court law, a fairminded jurist could conclude that Cuero's plea was not induced by any promise by the prosecutor.  *See* Appendix A. Even assuming there was such a promise, a fairminded jurist could conclude that the plea agreement was without constitutional significance before the entry of judgment. And, even if there were a breach of a constitutionally binding plea agreement, nothing in *any* Supreme Court decision clearly establishes that the state court was required to order specific performance.  Thus, the state court's decision was neither contrary to, nor an unreasonable application of "clearly established Federal law." 28 U.S.C. § 2254(d)(1).

For the foregoing reasons, I respectfully dissent.

---

**[23]** The majority determines that "specific performance is necessary to maintain the integrity and fairness of the criminal justice system" on the basis of a treatise, a 1977 Washington Supreme Court decision, and an article in the second volume of the now-defunct *University of San Fernando Valley Law Review*.  Maj. Op. at 20–21 n.14.  These hardly constitute "clearly established Federal law, as determined by the Supreme Court."  28 U.S.C. § 2254(d)(1).

Appendix A

Plea of Guilty/No Contest – Felony
Signed December 8, 2005

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | For Court Use Only |
|---|---|
| PEOPLE vs   MICHAEL   CUERO   **Defendant** | Clerk of the Superior Court<br>DEC 0   2005 |

| | |
|---|---|
| **PLEA OF GUILTY/NO CONTEST – FELONY** | Court Number: CF 255082 |
| | DA Number:  mam 7 04 |

I, the defendant in the above-entitled case, in support of my plea of Guilty/No Contest, personally declare as follows:

1.  Of those charges now filed against me in this case, I plead ___GUILTY___ to the following   [M.D.C.]
    offenses and admit the enhancements, allegations and prior convictions as follows:

| COUNT | CHARGE | ENHANCEMENT/ALLEGATION |
|---|---|---|
| CT  1 | S 23153 (b) | VC § 23540 -- C 18154 |
| CT  2 | S 12021 (a)(1) | 5·5·97 |
| | | 23152 |
| | | PC § 12022.7(a) |

PRIORS: (LIST ALLEGATION SECTION, CONVICTION DATE, COUNTY, CASE NUMBER, AND CHARGE)

667.5(b)  ① ECR 4506   5·22·91  SDSC  §459/460  PC — STRIKE.
667 (b-i)  ② ECR 10125   11·15·04  SDJC  §1485I  VC
           ③ SCE 193890   12·18·98  SDSC  §1485I  VC
           ④ SCE 232092   7·31·03  SDSC  §11377A VS5

2.  I have not been induced to enter this plea by any promise or representation of any kind, except: *(State any agreement with the District Attorney.)*
    STC – NO DEALS W/ PEOPLE.   [M.D.C.]

3.  I am entering my plea freely and voluntarily, without fear or threat to me or anyone closely related to me.  [M.D.C.]

4.  I understand that a plea of No Contest is the same as a plea of Guilty for all purposes.  [X]

5.  I am sober and my judgment is not impaired. I have not consumed any drug, alcohol or narcotic within the past 24 hours.  [MDC]

### CONSTITUTIONAL RIGHTS

6a.  I understand that I have the right to be represented by a lawyer at all stages of the proceedings. I can hire my own lawyer or the Court will appoint a lawyer for me if I cannot afford one.  [M.D.C.]

I understand that as to all charges, allegations and prior convictions filed against me I also have the following constitutional rights, which I now give up to enter my plea of guilty/no contest:

6b.  I have the right to a **speedy and public trial by jury**. I now give up this right.  [M.D.C]

6c.  I have the right to **confront and cross-examine all the witnesses** against me. **I now give up this right.**  [M.D.C.]

6d.  I have the right to **remain silent** (unless I choose to testify on my own behalf). I **now give up this right.**  [M.D.C.]

6e.  I have the right to **present evidence in my behalf** and to have the court subpoena my witnesses at no cost to me. **I now give up this right.**  [M.D.C.]

| Defendant: | CASE NUMBER: |
|---|---|
| MICHAEL CULERZ | SCE 255082 |

## CONSEQUENCES OF PLEA OF GUILTY OR NO CONTEST

14    420

7a. I understand that I may receive this maximum punishment as a result of my plea: ___ years in State Prison, $ 10,000 fine and 4 years parole (4, 7, 14, life) with return to prison for every parole violation. If I am not sentenced to prison I may receive probation for a period up to 5 years or the maximum prison term, whichever is greater. As conditions of probation I may be given up to a year in jail custody, plus the fine, and any other conditions deemed reasonable by the Court. I understand that if I violate any condition of probation I can be sent to State Prison for the maximum term as stated above. **M.D.C.**

7b. I understand that I must pay a restitution fine ($200 - $10,000), that I will also be subject to a suspended fine in the same amount, and that I must pay full restitution to all victims. **M.D.C.**

7c. I understand that my conviction in this case will be a serious/violent felony ("strike") resulting in mandatory denial of probation and substantially increased penalties in any future felony case. **M.D.C.**

7d. I understand that if I am not a U.S. citizen, this plea of Guilty/No Contest may result in my removal/deportation, exclusion from admission to the U.S. and denial of naturalization. Additionally, if this plea is to an "Aggravated Felony" listed on the back of this form, then I **will** be deported, excluded from admission to the U.S., and denied naturalization. **M.D.C.**

7e. I understand that my plea of Guilty or No Contest in this case could result in revocation of my probation or parole in other cases, and consecutive sentences. **M.D.C.**

7f. My attorney has explained to me that other possible consequences of this plea may be: (Circle applicable consequences.) **M.D.C.**

(1) Consecutive sentences
(2) Loss of driving privileges
(3) Commitment to Youth Authority
(4) Registration as an arson / sex / narcotic / gang offender
(5) Cannot possess firearms or ammunition
(6) Blood test and saliva sample

(7) Priorable (increased punishment for future offenses)
(8) Prison prior
(9) Mandatory prison
(10) Presumptive prison
(11) Sexually Violent Predator Law
(12) Possible/Mandatory hormone suppression treatment

(13) Reduced conduct credits
  (a) Violent Felony (No credit or max. 15%)
  (b) Prior Strike(s) (No credit to max. 20%)
  (c) Murder on/after 6/3/98 (No credit)
(14) Loss of public assistance
(15) AIDS education program
(16) Other: _____
_____    **M.D.C.**

## OTHER WAIVERS

8. **(Appeal Rights)** I give up my right to appeal the following: 1) denial of my 1538.5 motion, 2) issues related to strikes priors (under PC sections 667(b)-(i) and 1170.12), and 3) any sentence stipulated herein. **M.D.C.**

9. **(Harvey Waiver)** The sentencing judge may consider my prior criminal history and the entire factual background of the case, including any unfiled, dismissed or stricken charges or allegations or cases when granting probation, ordering restitution or imposing sentence. **M.D.C.**

10. **(Arbuckle Waiver)** I give up my right to be sentenced by the judge who accepts this plea. ✱ **M.D.C.**

11. **(Probation Report)** I give up my right to a full probation report before sentencing. ⊠

---

SDSC CRM-12(Rev. 11-03)      **PLEA OF GUILTY/NO CONTEST - FELONY**      Page two of three

| Defendant: MICHAEL CUERO | CASE NUMBER: SCE 255082 |
|---|---|

**PLEA**

12. I now plead Guilty/No Contest and admit the charges, convictions and allegations described in paragraph #1, above. I admit that on the dates charged, I: *(Describe facts as to each charge and allegation)*

— WAS DRUNK UNDER THE INFLUENCE AND RAN OFF THE ROAD HITTING A VEHICLE AND PERSON CAUSE SERIOUS BODILY INJURIES; AND HAD POSSESSION OF A GUN AFTER CONVICTION OF A FELONY. [M.DC]

13. I declare under penalty of perjury that I have read, understood, and initialed each item above and any attached addendum, and everything on the form and any attached addendum is true and correct. [M.DC]

Dated: 12-8-05    Defendant's Signature _Michael Daniel Cuero_

Defendant's Address: _____
                                    Street

_____
City            State        Zip

Telephone Number: (    ) _____

Defendant's Right Thumb Print

**ATTORNEY'S STATEMENT**

I, the attorney for the defendant in the above-entitled case, personally read and explained to the defendant the entire contents of this plea form and any addendum thereto. I discussed all charges and possible defenses with the defendant, and the consequences of this plea, including any immigration consequences. I personally observed the defendant fill in and initial each item, or read and initial each item to acknowledge his/her understanding and waivers. I observed the defendant date and sign this form and any addendum. I concur in the defendant's plea and waiver of constitutional rights.

Dated: 12-8-05    ALBERT M. TAMAYO _(signature)_
                  (Print Name)    **Attorney for Defendant**    (Signature)
                                  (Circle one:  PD / APD / PCC / RETAINED)

**INTERPRETER'S STATEMENT (If Applicable)**

I, the sworn _____ language interpreter in this proceeding, truly translated for the defendant the entire contents of this form and any attached addendum. The defendant indicated understanding of the contents of this form and any addendum and then initialed and signed the form and any addendum.

Dated: _____    _____
                            (Print Name)    Court Interpreter    (Signature)

**PROSECUTOR'S STATEMENT**

The People of the State of California, plaintiff, by its attorney, the District Attorney for the County of San Diego, concurs with the defendant's plea of Guilty/No Contest as set forth above.

Dated: 12.5.05    _____
                  (Print Name)    Deputy District Attorney    (Signature)

**COURT'S FINDING AND ORDER**

The Court, having questioned the defendant and defendant's attorney concerning the defendant's plea of Guilty/No Contest and admissions of the prior convictions and allegations, if any, finds that: The defendant understands and voluntarily and intelligently waives his/her constitutional rights; the defendant's plea and admissions are freely and voluntarily made; the defendant understands the nature of the charges and the consequences of the plea and admissions; and there is a factual basis for same. The Court accepts the defendant's plea and admissions, and the defendant is convicted thereby.

Dated 12-8-05    _____
                                    Judge of the Superior Court

Appendix B

Transcript of Plea Hearing
December 8, 2005

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN DIEGO

EAST COUNTY DIVISION

DEPARTMENT 2      HON. CHARLES W. ERVIN, JUDGE


THE PEOPLE OF THE STATE OF CALIFORNIA,

               Plaintiff,

vs.

MICHAEL DANIEL CUERO,

               Defendant.

Case No. SCE255082


Reporter's Transcript

December 8, 2005

Pages 1 through 9

Appearances:

    For the Plaintiff:    Kristian Trocha
                           Deputy District Attorney

    For the Defendant:    Albert Tamayo
                           Deputy Public Defender

                           Toni Christy, RPR, CRR, CSR
                           CSR Certificate No. 12159
                           Official Reporter
                           El Cajon, California

El Cajon, California, December 8, 2005

THE BALIFF: Cuero.

THE COURT: Michael Cuero, change of plea.

MR. TAMAYO: That matter is ready. Albert Tamayo with Mr. Cuero.

MR. TROCHA: Kristian Trocha.

THE COURT: SCE 255082. In this case Mr. Cuero will be pleading guilty to?

MR. TAMAYO: Essentially it's the sheet without the Count 3 misdemeanor.

THE COURT: He's going to plead guilty to everything on the charging document with the exception of Count 3, the 11550 under the influence of a controlled substance, misdemeanor charge? So he's pleading guilty to Count 1, DUI, felony DUI, 23153(a); 12022(a)(1), possession of a firearm by a felony. He is admitting prior DUI conviction from 1997. He is admitting the 12022.7(a), great bodily injury on Mr. Jeffrey Feldman as a result of his collision in the felony DUI. He is admitting prison priors?

MR. TAMAYO: There's four.

THE COURT: Prison priors, '91, '94, '98 and '03 in cases 076, 125, 890 and 093 for burglary, auto theft, auto theft and possession of a controlled substance.

MR. TAMAYO: Strike prior for the first.

THE COURT: That's what I was looking at. He is

also admitting a strike prior which is that res burg from 1991. He's admitting prison priors times four, a strike prior times one. He is pleading guilty to two felonies, the UI with a prior conviction for DUI and the GBI allegation, which is attendant to Count 1. Is that correct?

MR. TAMAYO: Yes.

THE COURT: It is a sentence for the Court, no deals with the People. His maximum exposure is 14 years, 4 months in state prison, 4 years on parole and a $10,000 fine. That's the most he could receive by way of this plea; true, Mr. Tamayo?

MR. TAMAYO: It is.

THE COURT: Mr. Trocha?

DAN RODRIGUEZ: Yes.

THE COURT: Mr. Cuero, raise your right hand to be sworn.

(Defendant is sworn.)

THE COURT: Thank you. Keep your voice up so I can hear your answers to my questions. If I say anything today that you don't understand, if I say something you're confused by, it's your obligation to stop me so I know that, and your attorney will explain it to you further. Do you understand that.

THE DEFENDANT: Yes, sir.

THE COURT: Sir, what is your true, full and correct name?

THE DEFENDANT: Michael Daniel Cuero.

THE COURT: What is your date of birth?

THE DEFENDANT: 3/14/72.

THE COURT: Did you hear the plea agreement that I described?

THE DEFENDANT: Yes, I did.

THE COURT: Is it your full and complete understanding of the agreement to settle this case today?

THE DEFENDANT: Yes.

THE COURT: Is it what you wish to do?

THE DEFENDANT: Yes, I do.

THE COURT: Do you read write and understand the English language well?

THE DEFENDANT: I do.

THE COURT: Have you had any alcohol or drugs in the last 24 hours?

THE DEFENDANT: No.

THE COURT: You submitted two forms for me to review. The first is a three-page blue felony change of plea form, the other a Blakely Waiver. Did you read them?

THE DEFENDANT: Yes, I did.

THE COURT: Did you understand everything on them?

THE DEFENDANT: Yes.

THE COURT: Did your attorney thoroughly review them with you?

THE DEFENDANT: Yes, he did.

THE COURT: Did he answer any questions you might have had concerning them?

THE DEFENDANT: Yes.

THE COURT: To tell me he's done so, you read them and you understood them, lastly to tell me you wish to accept the agreement to this case, written on the blue form, and I read it to you a moment ago, assisted the by your attorney in this situation, did you sign your name to it?

THE DEFENDANT: Yes.

THE COURT: Place your initials in these boxes?

THE DEFENDANT: I did.

THE COURT: Did you put your thumb print on it?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions about anything on it now?

THE DEFENDANT: No.

THE COURT: You need more time to talk to your lawyer or anyone else about your decision to plead guilty to these charges?

THE DEFENDANT: No.

THE COURT: In addition to the plea agreement, the document sets forth and describes constitutional rights that you enjoy. Rights that you must freely and voluntarily waive and give up so I can accept your guilty plea. Do you understand this?

THE DEFENDANT: Yes.

THE COURT: Do you freely and voluntarily waive

and give up those rights?

THE DEFENDANT: I do.

THE COURT: You have a right to a trial by jury to determine facts which could be considered by a sentencing judge as aggravating factors, increasing your sentence to the maximum term which is allowed by law. Do you waive and give up your right to a jury trial in that regard and agree to allow a judge to make that determination?

THE DEFENDANT: I do.

THE COURT: If law enforcement seized any property from you, if you want the property back do you acknowledge at this time that you must notify that agency in writing within sixty days that you do want it back or your ability to receive it will expire?

THE DEFENDANT: Yes.

THE COURT: Do you join in your client's waivers and acknowledgments?

MR. TAMAYO: I do.

THE COURT: Do you understand the maximum punishment you could receive for this conviction is 14 years, 4 months in prison, 4 years on parole and a $10,000 fine?

THE DEFENDANT: I do.

THE COURT: Are you satisfied, based on your discussions with your client, that he read and understood the forms submitted and the nature and

consequences of his plea?

MR. TAMAYO: I do.

THE COURT: Before I accept your guilty plea, Mr. Cuero, do you have any questions about anything you're doing here today?

THE DEFENDANT: No.

THE COURT: Michael Daniel Cuero, in case CE255082, you're charged in Count 1 with a felony, offense driving while under the influence of alcohol or drugs, causing injury, with a prior conviction within the past ten years. To that charge, 23153(a) how do you plead, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: In Count 2 you're charged with 12021(a)(1) possession of a firearm by a person previously convicted a felony. To that charge how do you plead?

THE DEFENDANT: Guilty.

THE COURT: Are you pleading guilty freely and voluntarily?

THE DEFENDANT: Yes.

THE COURT: Are you pleading guilty because you were driving a motor vehicle at a time that you were under the influence of alcohol or drugs, and you ran off the road, hitting a vehicle and a person, causing serious bodily injury to that person. At the time you were also unlawfully in possession of a firearm having previously suffered a conviction for

a felony offense?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And do you admit that previous conviction for driving while under the influence in case 561 occurring on or about May 5th, 1997?

THE DEFENDANT: Yes.

THE COURT: Do you admit you suffered previous convictions for which you served time in state prison in case ending in 076, 125, 890, 093, the first of which was a residential burglary occurring May 22nd, 1991?

THE DEFENDANT: Yes, Your Honor.

THE COURT: The next for auto theft 10851, 11/15/1994?

THE DEFENDANT: Yes.

THE COURT: The next auto theft on or about December 18th, 1998?

THE DEFENDANT: Yes, Your Honor.

THE COURT: The last for a possession of a controlled substance on or about July 31st, '03?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you admit that your first conviction in that regard, the residential burglary 459/460 of the California Penal Code Section is that which would commonly be referred to as a strike prior?

THE DEFENDANT: Yes, sir.

THE COURT: The Court finds the defendant to be

in full possession of his faculties. There is a knowing and intent waiver of his rights, a sufficient factual basis for his plea established. His not guilty plea is withdrawn. Guilty plea is received. Count 1, 23153(a); Count 2, 12021(a)(1), both felonies. The Court finds the defendant to have admitted the prior conviction for DUI in case ending in 561. The 12022.7(a) allegation of great bodily injury attendant to Count 1 is deemed admitted.

The Court further finds that each of the four prison priors in cases 076, 125, 890, 093 have all been admitted. The Court lastly finds that the first prison prior, case 096, that is a 459/460 allegation to have been admitted by way of it being a strike prior. People's motion as to the misdemeanor count, which is Count 3?

MR. TROCHA: Dismiss in light of the plea.

THE COURT: It is dismissed in light of the plea on the motion of the People. Sir, you have a right to be sentenced by me because I'm the judge that took your plea. Do you give up that right so that your sentencing may occur by any other judge of this court?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Arbuckle Waiver for the record. You have a right to be sentenced by me January 9th. Do you give up that right so your sentencing may occur

January 11th, Wednesday?

THE DEFANDANT:  Yes, Your Honor.

THE COURT:  Time waived personally, January 11th, two o'clock in this department. Defendant to be held without bail, pending sentencing.  DNA sample collection at the direction of the sheriff.  Full probation report ordered.

(The proceedings were concluded.)

04:03:58
04:04:02
04:04:02
04:04:06
04:04:08
04:04:10
04:04:12
04:04:16